WILLIAM M'CARTY surviving partner of JAMES CUMMINS *against* GEORGE EMLEN.

A partnership debt may be attached for the private debt of one of the partners, and his interest therein shall be bound thereby.

THIS cause came before the court on a case stated. A foreign attachment issued at the suit of Elizabeth Pringle, administratrix of John Pringle, against the said William M'Carty for a debt due by M'Carty in his private capacity to Pringle, returnable, to March term 1793, in the Common Pleas of Philadelphia county. The attachment was served, and effects attached in the hands of the said George Emlen, who was the debtor of M'Carty and Cummins in company. Previous thereto, the present action was instituted in the Supreme Court to September term 1798, by William M'Carty, as surviving partner of James Cummins, against George Emlen, and on the 4th March 1793, a reference was agreed to, and a report made on the 20th January 1795, in favor of the plaintiff for 165*l.* 0s. 11d. on which judgment was rendered the same term. The question submitted to the consideration of the court was, whether the debt due from the said George Emlen is secured by the said attachment: Or whether the debtor will be exonerated by a payment to the attorney of William M'Carty, and also a creditor of the house of M'Carty and Cummins ?

The case was argued at the last March term, by Mr. Tilghman for the plaintiff, and by Mr. Ingersoll for Mrs. Pringle, and lay over until the present term for the filling up of the dates.

For the plaintiff. The case naturally divides itself into two points. 1. Whether this debt was attachable? 2. If it was, what ought to be the effect of the attachment ?

1. It is clear from the cases in the English books, that such an attachment cannot be supported by the custom. When the court is once possessed of an action for a demand, foreign attachment will not lie for the debt. 1 Salk. 291. A debt sued for in B. R. cannot be attached in London; because the inferior court cannot attach a debt in the superior court. Cro. El. 101, 157, 168, 563, 691. If a suit be begun in B. R., C. B., exchequer or chancery, no foreign attachment shall prevent the judgment. 2 Cha. Ca. 233, 234. S. P. 1 Rol. Ab. 552, F. pl. 1, 2, 3, 4. 1 Bac. Ab. 691. Espin. 231. 3 Com-Dig. 424. Dy. 247, in marg. 1 Rol. Rep. 105. So a duty which accrues by matter of record, cannot be attached. 1 Leon. 20. So an

attachment of goods, after the money is in the sheriff's hands, is void. 1 Leon. 264, pl. 353. Money awarded to be paid by A to B, under a rule of court, cannot be attached. Per Buller. 4 Term Rep. 313. The solid principle seems to be, that the law will not permit suits to be spun out *ad infinitum* and there is no reason why it should not govern here. In conformaty to his system it has been resolved, that a defendant in a former suit, should not be allowed to attach the moneys recovered against him, in the hands of the prothonotary. Dall. 354.

2. Elizabeth Pringle has sued William M'Carty in his private individual right, and to obtain her demand has attached a partnership debt. The plaintiff in the present suit, represents the firm of M'Carty and Cummins, and is, a trustee for the payment of the debts of that house. But the partnership stock is first liable to partnership debts. If there be two partners, and execution against one, the sheriff must seize the goods of both, and sell annun divided moiety, and the vendee will be tenant in common with the other partner. 1 Salk. 382. 2 Ld. Ray. 871. 1 Show. 174. Comb. 217. The judgment against one partner for his separate debt, shall not put the other in a worse situation. After the partnership debts are paid the surplus shall be liable to the private debts of the company. 3 Wms. 183. Joint traders becoming bankrupt, the joint creditors shall be first paid out of the partnership effects, and the separate creditors out of the separate effects. And if there be any surplus of the partnership effects, after all the partnership debts paid, the separate creditors shall come in : and so *vice versa*, the partnership creditors shall come in, on a surplus of the separate estate. 2 Wms. 500. There shall be no defalcation of a private debt and against a partnership debt, for the co-partnership debts must be first paid. 1 Wms. 326. On the dissolution of a partnership, a partner can only have a right to an account of the partnership, and to the balance due to him, if any on that account. The creditors of one partner can only have the undivided share of his debtor in the partnership effects. *Cowp.* 449. It is therefore submitted, that the attachment can only affect the surplus, after the creditors of the company are paid.

For the defendant, on the first point, it was contended, that the cases in England depend on the principle, that the process of an inferior jurisdiction shall not stop the proceedings of a superior court; this does not apply to Pennsylvania. Here the first suit had not proceeded to judgment, when the attachment was served ; and there is a striking difference between actions in their commencement, and those wherein

judgment has been entered. Foreign attachments are here founded on our own law, which merely respects foreigners, and was intended to oblige them to give bail. The remedy by attachment was meant to be co-extensive with cases where the party was in court, and it never could have been the object of the legislature to exempt debts when recovered from other suits.

As to the second point, the law as stated in Cowp. 449, seems to be contradicted by a later case in Doug. 627, where it was resolved, that if on an execution against one of two partners, the partnership goods are taken and sold, the sheriff shall pay over to the other partner a share of the produce thereof, proportioned to his share in the partnership effects.

The court this term proceeded to deliver their opinions.

M'Kean C. J. The objection made against the plaintiff, (Mrs. Pringle's) recovery, are that a suit was pending against Emlen by M'Carty the surviving partner, and that partnership debts must be paid in the first instance. In England, choses in action are attachable by custom, in the inferior courts. The reason why debts put in suit there were not suffered to be attached, arose from the courts of Westminster Hall not permitting proceedings begun before them, to be arrested in their progress by the smaller jurisdictions. But this reason cannot hold in Pennsylvania. I think this debt was attachable, otherwise foreigners will be in a better situation than the people of our own state But I also think, that a legacy is not attachable, nor money recovered in a suit in the sheriff's or prothonotary's hands, and that a defendant after paying a debt recovered against him, shall not be permitted to attach it. The latter points were determined in the court. Dall. 354.

It is in general a good rule, that partnership stock shall first be applied to pay partnership debts, but it does not, in my opinion, extend to the present case, and holds only in the cases of bankruptcy and actual insolvency, when an execution issues against one partner. It seems impracticable to apply it to the matters in controversy. For how could this adjustment be effected? How long should the plaintiff in the attachment wait? The case in Doug. 650, appears to be in point, and settles this question. So that my opinion on the whole is, that one half of the money attached be awarded to Mrs. Pringle, and the other half to the surviving partner

Shippen J. I also am of opinion that the share of M'Carty in the partnership is liable to the attachment, and that execution may be had

thereof.  The rule spoken of is only applicable to the cases of bankruptcy and actual insolvency.  It would be improper, that the administratrix should wait until the whole of the partnership accounts are settled.  If the company stock was dispersed over the different quarters of the world, what length of time would it take to ascertain whether there would be a sufficiency of effects to pay the partnership debts?  It would be impossible to carry the measure into execution, where many inquiries of an intricate nature must necessarily be gone into.

Yeates, J.   The act of assembly of 4 Anne (Prov. Laws, 44,) pursues in substance the custom of the city of London respecting foreign attachments, though the mode of procedure under it is somewhat variant.

There can be no doubt in England, from the cases cited on the argument, and many others, that when once a suit has been instituted in the superior court of Westminster, for the recovery of any debt or demand, though it has not been followed by a judgment, that the inferior courts cannot prevent the plaintiff from proceeding, by issuing a foreign attachment.  These decisions, principally in the old books, are declared to be founded on the jealousy which the superior courts had of their jurisdiction, and on the impropriety of inferior courts withdrawing, by their interposing process, actions which had originated before a higher tribunal.  But this objection does not occur amongst us, from a different arrangement of judicial powers.  The same courts which compel an appearance by the process of *capias* or summons, issue writs of foreign attachment.  Whether the modern adjudications rest on a different principle, the danger of multiplying and protracting suits to a length, seems unnecessary to be determined, since we must ultimately recur to our own municipal law, as the rule of our judgment.

The preamble of the act expresses the evil intended to be remedied thereby.  Previous thereto, " the effects of persons absenting were not equally liable with those of persons dwelling upon the spot, to make restitution for debts by them contracted, " &c.   To put both classes of debtors on the same footing, the county courts were impowered to grant writs of attachment against the goods and chattels of persons non-resident, " in whose hands or possessions the same shall be found."   To assert that the legislature, with this declared object in view, intended to place persons non-resident in a more advantageous state than the citizens of the government, would be harsh doctrine.   In many cases, the first notice received of a foreigner having effect within the commonwealth, is from his commenc-

ing his suit. If during its continuance, his right of action is sheltered against process, a thousand modes may be devised by the agent to protect it *in transitu* to his constituent;—and thus while our courts are open for the recovery of the demand of the person not residing within the state, they are shut against his creditors, who must prosecute their rights in a foreign country, under every disadvantage. The inconveniences which must necessarily result from such a construction of the act, oblige me to declare my concurrence, that the effects of a person non-resident are liable to a writ of foreign attachment, though an action has been brought in the state courts for their recovery.

To advance substantial justice, the Court of B. R. in a case where a plaintiff could not find sufficient effects of the defendant to satisfy his judgment, have ordered the sheriff to retain for the plaintiff's use, money which he had levied in another action, at the suit of the defendant. Armistead v. Philpot. Doug. 219.

Another question remains to be decided on. The debt due from George Emlen was owing to the partnership of M'Carty and Cummins. Elizabeth Pringle, as administratrix of John Pringle, claims a demand from M'Carty, due in his private and individual capacity.

It has been settled, as well on the ground of convenience as natural justice, that joint or partnership stock must in the first place be applied to pay the joint partnership debts, and that the creditors of a separate partner shall not be led in on the joint estate, till all the joint debts are first paid. 2 Vern. 293 706. As between one partner and the separate creditors of the other, they cannot effect the stock any further than that partner could whose creditors they are. 1 Vez. 242. No separate creditor of any one partner by any assignment or execution, can be entitled to more than the person in whose place he stood, but can only have such as was his debtor's share, after the other partner is satisfied. 1 Ves. 497. If a creditor of one partner takes out execution against the partnership effects, he can only have the undivided share of his debtor, and the sheriff's vendee must take the goods as tenant in common with the other partner. The creditor must take the undivided share in the same manner the debtor himself had it, and subject to the rights of the other partner. Cowp. 449. 3 Wms. 183. These principles I apprehend to be general, and that they are not confined merely to bankruptcies and actual insolvencies. A strong probable insolvency I take to be within the same reason. Where no insolvency of the company is feared, the grounds of the resolutions stated must clearly fail.

I acknowledge that considerable difficulties may occur in ma-

ny instances, in ascertaining whether there are sufficient funds to pay the partnership debts, over and above the company debt attached ; but I think in a number of cases it may be effected by a reference. The delay in my idea is necessarily incident to the attachment of a company debt, for a demand against one partner individually. In Eddie v. Davidson, Doug. 650, it does not appear that there were many doubts entertained of the solvency of Davidson and Birnie to pay the debts of their late partnership ; but the counter affidavit denied that Birnie had an equal share in the partnership effects, and stated that he had embezzled the joint stock to a considerable amount; and the court directed that it should be referred to the master to take an account of the share of the partnership effects to which Birnie was entitled, and such share only was to be paid to his assignees. The case therefore in principle resembles the resolution cited in Cowp. 449, and some difficulty and delay must have occurred on the master's inquiry.

If Pringle, the intestate, had owed a sum to the company, equal to the private debt due to him from M'Carty, he could not on a suit brought against him therefor, have deducted M'Carty's proportion of the company debt from the demand against himself, unless there was surplus beyond what would pay the debts of the co-partnership. 1 Wms. 326, 327. 2 Vern. 293. 1 Atky. 100. It would seem to follow, that the administratrix should not be in a better situation, when there was no debt due by the partnership to her intestate. The result therefore of my sentiments on the last point, (which I give with no small diffidence,) is, that if there is any surplus after paying the company debts of M'Carty and Cummins, the former's share of such surplus, so far as it respects the debt in question recovered against George Emlen, only is bound by the attachment of Elizabeth Pringle. It is stated, that the attorney in fact of the plaintiff claims as a creditor of the company.

Smith, J. I will not give my opinion fully, though I have prepared it at some length. The Chief Justice has expressed my sentiments entirely, and I perfectly concur with him.

Judgment that moiety of the money attached be paid to Elizabeth Pringle, administratrix of John Pringle, by George Emlen, the garnishee, and that the remaining moiety be paid to William M'Carty, the plaintiff in this action.

Vide 4 Vez. jun. 396, in the exchequer in 1779, wherein it is held that assignee, executor or separate creditor coming in the

right of one partner against the joint property, comes into nothing more than an interest subject to an account between the partnership and partner, and therefore to the joint debts. An assignee, under a separate commission of bankruptcy, has only the same right to stand in the place of the bankrupt by the common law, not under the bankrupt laws.