PHILLIPS and others *vs.* COOK.

On an execution against *one* of *two partners*, the sheriff may *seize* the *entire partnership effects*, or so much thereof as may be necessary to satisfy the execution, and sell *the interest of the partner* against whom the execution is issued ; and *an action of trespass* will not lie against the sheriff at the suit of the *other partner* or *his assignees* for delivering to the purchaser the property sold.

The purchaser, in such case, becomes a tenant in common with the other partner, and if he

purchase with notice that the goods are partnership effects, takes *subject to an account* between the partners, and to the *equitable claims* of the *creditors of the firm* in the name of the other partner.

*It seems* that the sheriff may, against the will of the other partner, *deliver the property sold* to the purchaser.

[ *390 ] *It seems* the court of chancery is the appropriate *forum* to be resorted to by the solvent partner, or by the creditors of the firm against the purchaser for the enforcement of the lien, although *courts of law* in the exercise of their *equitable powers* have sometimes interfered for the protection of the solvent partner or the creditors of the firm. The cases upon the subject adverted to, and commented upon, and the conclusion arrived at, that neither a court of equity or law have the power to stay an execution until an account be taken.

*It seems* the proceeds of the sale *must be paid over* to the execution creditor, and the recourse of the solvent partner or the creditors of the firm is against the property in the hands of the purchaser.

THIS was an action of *trespass de bonis asportatis*, tried at the Onondaga circuit in September, 1837, before the Hon. DANIEL MOSELEY, one of the circuit judges.

The plaintiffs made title to the property in question under an assignment *for the benefit of creditors*, executed to them by *Mrs. A. Ruoul*, a member of the firm of *A. Damaus & Co.* composed of herself and *A. Damaus*. The assignment was executed in the evening of the *eighth* day of December, 1836. The business of the firm was that of druggists and booksellers, and by the assignment executed by Mrs. Ruoul, *in the name of the firm*, all the goods, books, stationery, drugs, medicines, and all other property in the store occupied by the firm in the village of Syracuse, was transferred to the plaintiffs. The firm at the time was *insolvent*. The property assigned amounted to nearly $5000. On the 9th December the plaintiffs took possession of the property and commenced the disposition thereof at private sale and at auction, and continued to do so until 30th January, 1837, when the defendant, as a deputy of the sheriff of the county of Onondaga, took and sold goods of the value of $536,56, and delivered the same to the purchasers. The defendant sold the goods by virtue of an execution against *A. Damaus*, one of the members of the firm of *A. Damaus & Co.* who absconded about the first day of November, 1836. The defendant, as deputy sheriff, received the execution on the *seventh* day of December, 1836, and on the next day *in the morning* levied upon the goods in the store then occupied by the firm of *A. Damaus & Co.* All, however, that he did as to the levy was to go into the store and see the goods. The execution [ 391 ] tion was for $410. The counsel for the *defendant insisted that the assignment was void as against a creditor who had caused a *levy* to be made upon the individual interest of one of the partners by virtue of an execution, and at all events that *trespass* would not lie. The judge charged the jury that the assignment was valid, and that the defendant was

not in a situation to question it; that *trespass* was the proper action, and that the plaintiffs were entitled to recover. The defendant excepted to the charge, and the jury found a verdict for the plaintiffs for $536,56. The defendant asks for a new trial.

*B Davis Noxon*, for the defendant, insisted upon the following points:

1. The defendant being a deputy sheriff and having an execution in his hands against Alfred Damaus, one of the firm of A. Damaus & Co. had a right to levy the same upon the interest of Damaus in the goods of the firm, although in the actual possession of Mrs. Ruoul the other partner.

2. A levy by a sheriff on goods under such circumstances is good, although the sheriff does not remove or lock up the goods, or in any way dispossess the other partner.

3. The sheriff having once levied would not commit a trespass by selling the goods in pursuance of such levy; if any trespass was committed it was by the levy and not by the sale, and the levy having been made before the assignment, the plaintiffs can have no greater rights than A. Damaus & Co. had before the assignment, and therefore cannot in any event maintain trespass. If any action at law could be maintained by the assignees, it is an action of trover after a demand and refusal.

4. The assignment being made by one partner of the firm in the name of the firm to trustees for the benefit of certain preferred creditors, and without the consent of the other partner, is not within the ordinary business of the partnership, and therefore not binding on the other partner, and void.

5. The sheriff, by virtue of his execution and levy, succeeded to the rights and interest of Damaus in the *partnership property, [ *392 ] and therefore stands in a situation to question the validity of any assignment made by the firm or by Mrs. Ruoul, in the name of the firm.

6. The assignees cannot maintain any action at law; their only remedy, if any, is in equity.

7. If the sheriff sold more than the interest of Damaus in the goods, to wit, the whole of the goods, and he had no such authority, but might sell the interest of Damaus, then he exceeded his authority, and the purchaser neither gained nor did Mrs. Ruoul lose any thing.

*J. Wilkinson*, for the plaintiffs, insisted upon the following points:

1. The assignment of the goods of the firm of A. Damaus & Co. made after Damaus had absconded, was good. *Angel on Assignments*, 49.

6. The possession of the plaintiffs was sufficient to sustain the action against any one other than a creditor of the firm. 11 *Wendell*, 54.

3. There was no actual levy. The sheriff never took any possession of the goods until near two months after the plaintiffs had been in possession.

4. This was the partnership property of the firm of A. Damaus & Co. and

an execution against one partner would not justify the sheriff in selling the property of the firm.   1 *Wendell*, 311.   2 *Eng. Ch. R.* 189.

*By the Court*, COWEN, J.   A point is now made on the validity of the levy; but it was not raised at the trial : and the only question is whether *trespass* will lie against the sheriff for seizing and selling under a *fi. fa.* the property of an insolvent firm, to satisfy the individual debt of one of the members.   The action here is the same as if it had been brought by the partners, it being by trustees, claiming under an assignment made subsequent to the levy.   The question has been a good deal discussed before us in consequence of some apparent conflict in the cases, and a difficulty upon them, felt more by the other members of the court ·than by myself.   For [ *393 ] one I never could bring myself to doubt *a \*priori;* nor have I been able to see any serious discrepancy in the adjudications.   Not a single direct authority has been shown for maintaining this action ; nor any intimation to that effect, although the question stood over in *Thurber* v. *Lewis,* for several terms, under directions to re-argue.*   The whole doctrine is gone into a distinct section of *Collyer on Partnership,* 473, to 478, *Am. ed. of* 1839, where several of the most material cases, English and American, are cited.   The result is, that at law, the sheriff may *seize* and *sell* the interest of a partner in all choses in possession, the same as he may that of any joint tenant, or tenant in common.   Partners are joint tenants in the stock and all the effects ; they are seized *per mi et per tout.* *Collyer,* 64.   And the rule of proceeding expressly laid down in the books is, that, under a *fi. fa.* against one, the sheriff must seize the entire partnership effects, so far as may be necessary to satisfy the execution ; he must sell that partner's share against whom the execution is ; and then the vendee becomes tenant in common with the other partner.   *Backhurst* v. *Clinkard,* 1 *Shower,* 169.   *Holt,* 643, *S. C.*   *Heyden* v. *Haydon,* 1 *Salk.* 392. The doctrine of these cases has never been doubted ; but has been as often reaffirmed as the question has been mentioned by courts or in any of the *Treatises on Partnership.*   It was adjudged in *Jacky* v. *Butler,* 2 *Ld. Raym.* 871, and in *Marriott* v. *Shaw, Com. Rep.* 275, 277.   The true rule was laid down by Holt, Ch. J., in *Pope* v. *Haman, Comb.* 217 : " Upon a judgment against one partner, the sheriff may take the goods of both in execution ; and the other co-partner hath no remedy at law, otherwise than by retaking the goods, if he can ; for the vendee of the sheriff becomes tenant in common with the other co-partner."   This is but saying what every one would, who has studied the text of Littleton, *Co. Litt.* § 323, [ *394 ] 199, *b.*   So far as this section and Coke's Commentary pertain *to the question, they are both adopted in *St. John* v. *Standring,* 2 *Johns. R.* 468.

---

* The re-argument in *Lewis* v. *Thurber,* was had at the last *July term,* but was not decided until *January term,* 1841.   It will appear among the cases of the latter term.

It does not appear to have been doubted in any age of the law, that the sheriff might take and sell the separate partner's interest. The questions have been whether he might not sell the whole interest of both, on a *fi. fa.* against one ; or whether he could seize the whole. The answers in all the cases have been, you must seize the whole, and sell only the moiety belonging to the debtor. These were called old cases on the argument ; the antiquity of those cases only adds to their strength. They are all, however, since the revolution of 1688, ranging from Wm. and Mary down to the Georges. They were cited and approved by Lord Kenyon, in *Smith* v. *Stokes*, 1 *East*, 363, 367. More than that, they were expressly affirmed by a decision of this court, *Schrugham* v. *Carter*, 12 *Wendell*, 131. The entire partnership property was there taken under an execution against one, and this court held that *replevin* would not lie by the assignees of the firm. Savage, Ch. J., laid down the law as it was understood by Holt, Ch. J., in the reign of William and Mary.

It was admitted in argument that the sheriff may seize, but it was said that neither he nor the purchaser can remove the property. Whereas the cases at law are all express that he may sell, from *Holt* down to the 12 *Wendell*. The distinction sounds singular on its face. For what purpose does a sheriff seize property on a *fi. fa.* if not to remove and sell it ? But his power was assailed *a priori*, and it was said he can exercise no greater power over the property than the copartner against whom the execution goes ; that by the levy, the sheriff is but a tenant in common, who must wait his chance, and take the goods when he can ; but he cannot remove them if his co-tenant be unwilling and hold on to the possession, without committing a breach of the peace. If this were so, the reason would be a perfect *non sequitur* as to the right of suing in trespass *de bonis*, trover or replevin, however it might entitle the co-tenant to sue for an assault in wresting the property from him. *Hyatt* v. *Wood*, 4 *Johns. R.* 150, 159, 160.

But is the law *so absurd as to command a sheriff by its    [ *395 ] writ to seize and sell an article, yet forbid him to remove it, or declare him a breaker of the peace for selling it, because he resisted, and put to the exercise of force ? This is a sort of imbecility which the common law has been careful to avoid in all cases. When it directly commands an officer to do any act, it impliedly gives him the power and means of performing it, and in nothing is this rule more conspicuous than in the execution of a sheriff's power. But it cannot be necessary to pursue the question through a course of reasoning, for the sheriff's right at law is settled by the authority of this court. *Wilson & Gibbs* v. *Conine*, 2 *Johns. R.* 280, is not opposed to it. There both the partners sued in *trover* for a seizure upon execution against one ; but they recovered merely because the defendant failed in his formal proof of the decree on which the execution issu-

ed.  On motion for a new trial, the preference of partnership creditors was recognized, on the ground, as expressly stated, that the motion appealed to the equity of the court.  They did not pretend to deny the sheriff's legal right, though he had seized and sold a consumable article, after being forbidden by the plaintiff, and the purchaser had actually taken it away.  No one even hinted that the sheriff wanted the legal power, provided his authority had been shown.  Vide per Kent, Ch. J. at p. 282.  There are, I concede, some respectable dicta which favor an action at law by the partner who has been thus dispossessed: the action being in his name alone.  Such is that of Putnam, J. in Rice v. Austin, 17 Mass. R. 206, 7, and Parker, J. in Gibson v. Stevens, 7 N. H. Rep. 357, 8.  Putnam, J. cited no authority, and professedly spoke hypothetically.  The point was not raised and finally decided in either of the cases; and Parker, J. admitted himself to be speaking on a difficult branch of the law.  I have looked into the three cases cited by him.  Two of them avowedly go on the ground of equity—impliedly therefore admitted the law to be different from what the learned judge understood it to be.  The third was a case of tenants in common, the sheriff having expressly sold the whole under an execution against [ *396 ]  one.  Melville v. *Brown, 15 Mass. Rep. 82.  Vide White v. Osborn, 21 Wendell, 72, S. P. as to a sale of the whole by one of two tenants in common.  It would be different, even in such a case, should the sheriff sell only the proper share, though he seized the whole, as he must.  Clearly it cannot be denied that a copartner has as great an interest at law, and even a greater than a simple tenant in common, nor that if the sheriff can on a fi. fa. against one of several tenants in common, take the whole chattel and sell the moiety in despite of opposition from the co-tenant, he may do so as against the co-partner.  That he may do it in the former case was directly held in Messereau v. Norton, 15 Johns. R. 179.  He had, under an attachment against one tenant in common, seized and taken a yoke of oxen from the actual possession of the other, and proceeded to sell them; and they were taken away by the purchaser, though the co-tenant forbade the sale.  He brought trespass; but this court held it would not lie, citing as authority the very case of Heydon v. Heydon, respecting the sheriff's authority against one of several partners.  In Shaver v. White, 6 Munf. 110, the attachment was sued out against one of two partners, and 300 head of cattle taken by the sheriff out of the possession of both; and they both brought trespass for the taking.  The action was against the plaintiff in the attachment who directed the sheriff to levy.  The court held that the action would not lie, and pronounced their opinion, also, that it could not be maintained against the sheriff, citing Heydon v. Heydon.  The argument for such an action goes the length of saying that when a man puts his property into partnership, it is absolutely protected against a levy at the suit of

his individual creditors ; that it is exempt from execution like his ten sheep or his cow under the statute. A debtor has but to form a partnership, and he may set executions at defiance so far as his own debts are concerned, still possessing and trading upon that very capital contributed by his individual creditors. It was thought singular by a learned judge in Pennsylvania, that even the qualified exemption allowed in such a case by a court of chancery should not have been repudiated as contrary to the statute against transfers to defraud creditors. He said, " that a *con-   [ *397 ]
tract which enables the parties to keep a class of their creditors at bay, and yet retain the *indicia* of ownership, should not have been deemed within the statute of Elizabeth, is attributable exclusively to the disposition universally manifested by the courts of justice to encourage trade." *Gibson, Ch. J. in Doner* v. *Stauffer*, 2 *Penn. R.* 204. To give an action of trespass by the partners, would make the contract equivalent to the protection afforded by the owner's dwelling house. It would be putting it under perpetual lock and key as to all his private debts.

It is supposed that *Dob* v. *Halsey*, 16 *Johns. R.* 34, gives countenance to this action. That was assumpsit by two out of three partners, to recover the price of goods sold by a third, because he had turned them out in payment of his private debt. The plaintiffs were nonsuited, on the ground that *all* the partners had not joined. The action was a singular one. The decision seems to suppose that after a partner has sold the goods of the firm in payment of his honest debt, without any fraud as against himself, he may join his co-partners in an action to recover the price of the goods—a price which, when recovered, he may release, or still use the avails for his individual benefit. Admitting his copartners to have been defrauded by the sale, a bill in equity against him and the vendee, would seem to be the more obvious remedy. In *Roderiques* v. *Heffernan*, 5 *Johns. Ch. R.* 417, a bill was filed and relief obtained in that form, for such an injury. The state of accounts between the partners should be inquired into, and if the firm be not injured, the vendee should not be disturbed. He has obtained no more than the law would give him, on execution against the man from whom he received the goods. Independently of an account, and especially where the action at law is in the name of all the partners, I cannot but think the decision of the supreme court of appeals of Kentucky in *Owings & Co.* v. *Trotter*, 1 *Bibb*, 157, denying an action to the firm, more in accordance with the law and justice of the case.

In the state of Vermont, all preference of partners or their creditors by way of lien over an attachment or execution for the debt of a sole partner has been entirely repudiated, *both at law and in   [ *398 ]
equity. *Reed* v. *Shepardson*, 2 *Verm. R.* 120.

On the other hand, there is no doubt of the *equitable rule* in England,

New-York and most of the states, that, though the sheriff may at law levy on and sell the right of the individual partner, which shall pass absolutely to the purchaser, yet he takes subject to an account between the partners, which if it eventuate against him, his purchase may go for nothing. That, however, is his own look out. It is no reason why the creditor should be deprived of his legal right to sell, or the purchaser of his right to buy. In *The King* v. *Sanderson*, Wightw. 50, 53, Macdonald, Ch. Baron, said: " In cases of execution by a subject, it is generally settled that the whole must be taken in execution and sold, and the purchaser becomes a tenant in common with the other partners." *Vid. United States* v. *Hack*, 8 *Pet.* 271, 275, 276. The English cases to this effect are collected in a note to *Smith's case*, 16 *Johns. R.* 106 *to* 109. The very idea of going into equi_ ty concedes the right of the sheriff to sell at law. On the question coming before Chancellor Kent, he refused to restrain the sheriff, admitting his ab- solute right at law not only to levy, but sell. *Moody* v. *Payne*, 2 *Johns. Ch. R.* 546. The bill was filed by the co-partner of the debtor. So in *Brewster* v. *Hammet*, 4 *Conn. R.* 540, the common goods were attached for the debt of one partner; but, on execution coming out, stayed in the hands of the sheriff. On bill filed by the other partners, though the firm was insolvent, the court denied them any relief, saying the property would be safer in the hands of the creditor, than if delivered back to the *insolvent partners.* Hosmer, Ch. J. said: " If the creditor take the property, he assumes a liability to the equitable demands of the creditors of the firm up- on him ; and their interest will be better promoted by leaving them to the redress, to which they have a claim, than by placing the fund in the posses- sion of their insolvent debtors." He reviewed the cases, and concluded that the equitable property in the goods was vested in the creditors of the partnership ; but added, " in all events the partners have no equi- table claim to the restoration of the goods." · *They were of course sold by the sheriff at law ; and taken entirely away from the partners. The bill was simply dismissed. Thus the doctrine is not on- ly of an equitable nature purely, but even in a court of chancery is received under various qualifications and restrictions which can never enter into an action at law. In *Hoxie* v. *Carr*, 1 *Sumner*, 181, Story, J. says: " Upon a dissolution of a partnership, each partner has a lien upon the partnership effects, as well for his indemnity against the joint debts, ar for his propor- tion of the surplus. But the creditors of the partnership, as such, have no lien upon the partnership effects for their debts ; *their equity* has been tru- ly said to be *the equity of the partners*, and is to be worked out through the rights of the latter." It follows that, if there be no creditors, no claim of surplus, or if the partners be insolvent, even a court of chancery will with- hold its aid. That the lien is purely equitable, may be inferred from what

[ *399 ]

was farther said in the case cited; viz, a purchaser *without notice* holds discharged of the lien. It is in its nature, therefore, no more than the lien raised in chancery for the purchase money of an estate. Story, J. was speaking on a bill filed by a copartner to enforce the lien against a purchaser; and that chancery alone is the forum ordinarily resorted to, may be seen by various other cases which treat of the same subject. *McCulloh* v. *Dashiell's Admr.* 1 *Harr. & Gill*, 96. *Story* v. *Moon*, 3 *Dana's R.* 331, 334. *White* v. *Dougherty*, *Mart. & Yerg.* 309. *Gilmore* v. *The North American Land Co.* 1 *Peters' C. C. R.* 460, 465. *Pierce* v. *Pass*, 1 *Porter*, 232. In *M'Donald* v. *Beach*, 2 *Blackf.* 55, 58, Holman, J. said: "It is contended that the separate debt of one partner should not be paid out of the partnership estate until all the debts of the firm are discharged. This doctrine is correct, but it does not apply until the partners cease to have a legal right to dispose of their property as they please. It is applicable only when *the principles of equity* are brought to interfere in the distribution of the partnership property among the creditors."

I admit that courts of law have sometimes felt able to apply this equitable doctrine. One instance is, where an *action for a [ *400 ] false return was brought against the sheriff, on the ground that he had omitted to levy on partnership property under process of domestic attachment or *fi. fa.* against an individual partner. *Dunham* v. *Murdock*, 2 *Wendell*, 553. *Pierce* v. *Jackson*, 6 *Mass. R.* 242. *Phillips* v. *Bridge*, 11 *Mass. R.* 242, 249. *Commercial Bank* v. *Wilkins*, 9 *Greenl.* 28. *Tappan* v. *Blairsdell*, 5 *N. Hamp. R.* 189. This is on the obvious ground that the plaintiff has lost nothing but that of which a court of chancery would have deprived him; and the sheriff ought not to be held account. able for doing what the court of law sees that a court of equity would have compelled him to do. So the equitable right was tried at law where a part. ner sold out his share, covenanting against liens; the balance on an account, *inter se*, was decidedly against him, for which it was held his copartner had a lien, and so the covenant violated. *Hodges* v. *Holeman*, 1 *Dana*, 50, 53. Other like instances exist, some of which I shall hereafter have occasion to notice.

It is said this court is in the habit of arresting the sheriff's proceedings, on the application of the debtor's partner, that it will order an account to be taken by the clerk, and then direct the sheriff to pay such share of the proceeds to the copartner or shall appear to be his due. Something like this was indeed done in *Eddie* v. *Davidson*, *Doughl.* 650. The case, however, recognized the sheriff's right to sell, and the order was in terms to pay a part of the *money levied*, to the assignees of the copartner. The assignees obtained the order. A like order was made A. D. 1816, in *The King* v. *Rock*, 2 *Price*, 198, on motion by partners; and the court said there had

been many instances of such a reference, but they denied an *amoveas man-us*, thus recognizing the right to sell. *Vide note, id.* 198. Lord Eldon said, A. D. 1813, in *Waters* v. *Taylor,* 2 *Vesey & Beames,* 301, "According to the old law, I mean before Lord Mansfield's time, the sheriff, under an execution against partnership effects, took *the undivided share* of the debtor without reference to partnership accounts : but a court of equity would have set that right by taking an account, and ascertaining [ *401 ] what the sheriff *ought to have sold. The courts of law, however, have now repeatedly laid down that they will sell the actual interest of the partner, professing to execute the equities between the parties, but forgetting that a court of equity ascertained previously what was to be sold. How could a court of law ascertain what was the interest to be sold, and what the equities ; depending on an account of all' the partners for years ?" The action of the courts of law, however, seems not to have been by any means so uniform as Lord Eldon supposed. The rule alluded to by him had been applied for to the chief baron in *Chapman* v. *Brooks,* 3 *Bos. & Pull.* 289, but the application was unanimously refused ; the court all saying the question belonged to a court of equity ; that they had no power to take an account : and that the sheriff had a perfect right to go on and sell. Lord Alvanley said he hoped that would be the last application of a similar kind. [See two like cases before that in the same book, pp. 254 and 288.] Chambre, J. mentioned that in *Eddie* v. *Davidson,* no objection was made to the sale ; but there was merely an application for a share of the proceeds after sale ; and no objection to the motion by the party levying. In *Parker* v. *Pistor,* 3 *Bos. & Pul.* 288, 289, the court said all the difficulties were to be encountered in equity, the case being plain at law. " That the safest line of conduct for the sheriff to pursue, was to put some person in possession of the defendant's share *as vendee,* leaving him and the parties interested, to contest the matter in equity, where a bill might be filed stating that he had taken possession of the property, and praying that it might not be disposed of until all the claims were arranged." This appears to be the approved practice in Connecticut. *Witter* v. *Richards,* 10 *Conn. R.* 37, 43, *per Williams, J.* who cites and approves the direction in *Parker* v. *Pistor.*

But admitting that this court would interfere on a non-enumerated motion, that would be but equivocal evidence at best that the lien in question is of a legal character. Such a motion is very often in principle the mere substitute of a bill in equity. There are divers cases in which courts of law [ *402 ] have recognized and acted upon the lien when it arose *collaterally ; but these present exceptions to their ordinary course. They have not, in any instance that I can find, allowed the preference as matter of law ; but only availed themselves of an accidental relation or condition, to

apply it as the rule of equity. In all such acts, they admit themselves to be out of their natural element. We have seen several instances already, and I will notice a few other cases, in which the question has been considered by courts of law : some taking measured steps, and others declining all interference. In *White* v. *The Union Insurance Company*, 1 *Nott & M'Cord*, 556, the defendants were bound to pay dividends on stock belonging to a firm. The dividends became due, and were declared, after the sole surviv-ing member of the firm had assigned the partnership effects to trustees for the payment of partnership debts, the firm being insolvent. An action was brought to recover the dividends, and held to be sustainable in the name of the assignees. The defendants proposed to set off a debt of the surviving partner alone. The peculiar shape of the action and positions of the parties here, enabled a court of law to let in the equitable doctrine, which they did. Yet the legal doctrine is well settled as a general one, that where a surviving partner sues for a debt of the firm, whatever he owes in his individual char-acter to the defendant may be set off. The learned judge (Bay, J.) who delivered the opinion of the court, admitted this to be so, citing *Mont. on Set-off*, 24. *Vid. also Meader* v. *Scott*, 4 *Verm. R.* 26, 29, *and The same* v. *Leslie*, 2 *id.* 569. But the learned judge thought the doctrine must be confined to cases where the firm is solvent. Yet how is that to be deci-ded without a general account ? In *Schatzill* v. *Bolton*, 2 *M'Cord*, 478, the funds of a firm were seized on foreign attachment against one of the partners for his sole debt. The court, by Richardson, J. said it was too well settled to be questioned that partnership property is liable to be taken in ex-ecution against one of the partners ; citing some of the English cases and our case of *Mesereau* v. *Norton*. He added, the possibility of their being liens by partnership creditors which may take away the chattel from the purchaser, is no objection to the sale. There being a \*lien  [ \*403 ] on property, as by mortgage, &c. does not prevent a sale subject to the lien, &c. The right against one of several partners in virtue of a foreign attachment, forms a conspicuous head in the American books. *Knox* v. *Schepler*, 2 *Hill*, 595, was the case of a *foreign attachment* against a sur-viving partner for his individual debt. He owned one-third of the partner-ship effects. The court held that the attachment lay ; but though at law he owned the whole by survivorship, they ordered but one-third to be paid over to the attaching creditors. This was one-third gross, for the court refused to take an account. Under the circumstances, however, they required the attaching creditors to give bond with surety, that they would abide the event of an account as between the partnership rights, and refund in favor of them and partnership creditors, on the principles of equitable preference, should that be so decreed. Harper, J. said that had been the course in *Schatzill* v. *Bolton*. Then, speaking of the one third in question before

him, " Can we," he asks, " go into an investigation of the equities which may exist against it ? Can we determine that there are creditors of the firm having a better claim to this fund ? or that upon a final accounting with the representatives of the deceased partners, *the absent defendant* may not be found a creditor of the firm, and entitled to retain all he has in his hands ; or indeed that there has not been a final accounting, as the partnership seems to have been long dissolved ?" The inquiry was declined.

Even the supreme court of Pennsylvania, possessing as they are known to do both equitable and legal powers, decline stopping to take an account. In *M' Carty* v. *Emlyn*, 2 *Dall.* 277, 2 *Yeates*, 190, *S. C.*, the money of a firm was seized by foreign attachment for the separate debt of a surviving partner. His interest was one half. The counsel of the garnishee moved a stay till an indemnity could be obtained against the foreign attachment. The motion was denied, and one half the money was ordered to be paid over absolutely to the plaintiff. *M'Kean*, Ch. J. and all the court admitted the rule in equity. But he animadverted on the granting of such an [ *404 ] application. He said a partner may *owe separate debts, and his property may consist of partnership stock ; yet if the objection prevails, it is impossible to conceive when the separate creditors will be able to make that property responsible. While the partnership continues, how shall they compel a disclosure and liquidation of all the debts and credits of the company ? and even when a partnership is dissolved, where will the separate creditors find the inclination or the power to scrutinize and close the records of a long and complicated mercantile connection ? But the law is happily otherwise : for it has been repeatedly settled here as well as in England, that a partner may be sued for separate debts ; that the partnership effect may be taken in execution and sold *by moieties ;* and that the purchaser of the moiety, under the execution, shall be considered as tenant in common with the partner owning the moiety." All this he considers proved by the very case before Lord Mansfield, *Eddie* v. *Davidson*, now relied on to show the contrary. The doctrine was afterwards glanced at in *Knox* v. *Sumners*, 4 *Yeates*, 477. A levy had been made under a fi. fa. for the separate debt of one partner, and there was a subsequent levy under a fi. fa for the joint debt. As between these conflicting levies, the execution for the separate debt was postponed to the other ; but mainly on the ground of fraudulent delay after the first was levied. In 1829, the important case of *Doner* v. *Stauffer*, 2 *Pennsyl. R.* 198, was heard and much considered. All the partnership effects had been levied upon and sold under executions against two partners for their separate debts ; some against one and some against the other. The firm was *insolvent,* and one of the partners sought to have the avails for which the effects had sold applied in payment of the firm debts, claiming that he was answerable for the whole debts of the firm. The court

held, that *under the circumstances,* it did not lie with him to interpose ; that neither he nor his copartner had any interest remaining, nor could the joint creditors claim through the partners ; that all the interest, legal and equitable, of the latter was gone. The court examined the right acquired by the purchaser under the separate executions. Gibson, *Ch. [ *405 ] J., in delivering their opinion, entered into a learned examination of the principle on which the preference of partnership creditors rests, and came to the well settled result that the execution creditor sells and the purchaser takes, not the chattels of the partnership, but *the interest of the partner incumbered with the joint debts.* That the creditors of the firm have therefore no claim to the proceeds of the sale, which must consequently be paid over to the execution creditor of the separate partner. The recourse of the firm creditors is necessarily to the property in the hands of the purchaser.

Several other cases in different parts of the union have presented and discussed the question when it arose in the proceeding by foreign attachment ; some refusing to recognize the preference, and others going strongly to favor it ; more strongly even than the South Carolina cases. Among those denying the preference, is *Wallace* v. *Patterson,* 2 *Har. & McHen.* 463. Among those going most strongly, to favor it, are *Gardiner* v. *Smith,* 12 *Lou. R.* (*Curry,*) 370 ; *Church* v. *Knox,* 2 *Conn. R.* 514 ; *Fisk* v. *Herrick,* 6 *Mass. R.* 271 ; *Upham* v. *Naylor,* 9 *id.* 490 ; *Barber* v. *The Hartford Bank,* 9 *Conn. R.* 407, and *Lyndon* v. *Gorham,* 1 *Gallis.* 367. The great favor generally shown to partnership property in New-England as against a foreign attachment for the debt of one, did not get a foothold without able resistance. I allude to the dissenting opinion of Hosmer, J. in *Church* v. *Knox,* 2 *Conn. R.* 522. At most, it now stands but as an exception to the general rule. In *Lyndon* v. *Gorham,* Story, J. said : " I consider that the present [foreign attachment] is a process in the nature of a bill in equity, to reach the funds of a debtor, and subject to all the liens and equities between the original parties ; and in order to do complete justice, it is necessary that all proper parties should be before the court." 1 *Gall.* 370. In the 1st vol. of his *Treatise on Equity,* 625, *ch.* 15, § 675, he says the preference seems incapable of being enforced in any other manner than by a court of equity : at law, he says, it is generally disregarded.

So far the cases fully illustrate the position, that in *whatever [ *406 ] form the preference in question has been enforced, whether directly by chancery, or by action on motion, or by foreign attachment, the courts have always considered themselves as departing from strict legal right, and administering an equity. Such, also, was the case of *Crane* v. *French,* 1 *Wendell,* 311, on non-enumerated motion. The sheriff holding two execu-

tions, one against the firm, the other against a single member of it, sold the common property ; and this court directed him to prefer the joint execution in the distribution. Chancery cases were manifestly cited as authority. The only case in a court of law at all relied upon was one in this court evi. dently depending on the same equitable principle. *The matter of Smith,* 16 *Johns. R.* 102. That was the case of an attachment under the abscond- ing debtor act, which, like a foreign attachment, covered all choses in pos- session and action of the debtor ; and this court took it upon them to declare the extent to which such an attachment, founded on the debt of an individ- ual, should operate on the effects of his copartners. Under the circumstan- ces, they ordered the partnership books, goods and moneys to be restored to the copartner not proceeded against, saying he had a right to retain them for the payment of the partnership debts. They said the case of partners is different from that of tenants in common of a chattel. All that is un. doubtedly so in equity : and it is evident the court speak in the light of equity, for they concede the legal right, in the language of the cases decid- ed under the legal rule. The identical question before them was afterwards entertained by Chancellor Kent on a bill in equity, *Robbins* v. *Cooper,* 6 *Johns. Ch. R.* 186, though we have seen he refused to interfere with an ex. ecution in a like case. Whoever heard of a right of action growing out of an equity ? an action of trespass like the one before us, or like *Lewis* v. *Thurber ?* Suppose the court had not stopped the sheriff in *Smith's case,* would he have been a trespasser in selling ? They said the attachment was like an execution ; yet in both the leading cases upon execution before

[ *407 ] cited from *Doug.* and *Bos. & Pull.* the court sanctioned a sale : in the one giving a direction as to the proceeds, and in the *other refusing to interfere. In *Smith's case,* this court mentioned *Fox* v. *Hanbury, Cowp.* 445, 449. But there the whole reasoning of Lord Mansfield and his judgment in the case, and all the authorities cited by him, *concede the power of the sheriff to sell, and of the purchaser to take and convert to his own use.* He admits this in every shape, both at law and in equity. Only in the latter case he says the vendee takes as tenant in com- mon, but subject to an account. No one has denied that, since 1776. It is the law of another court, where a tenant in common always holds subject to some sort of account. But his rights at law are not therefore the less. He may take and remove the goods and enjoy them exclusively ; but must account for the profits. If they are partnership goods, and that known to him, equity will, under circumstances, also hold him to account for the full value in favor of partners, or through them, to creditors.

The attempt to enforce the equitable rule at law in the form of trespass or trover against the sheriff or purchaser has failed, even where the sheriff proceeded under foreign attachments, in respect to which the preference of

the joint creditors has been singularly favored. *Shaver* v. *White*, before cited from 6 *Munf.* is one instance. The seisure was there under foreign attachment against one of several partners, for his sole debt, on which the cattle of both partners were taken contrary to their consent, yet an action by both was held not to lie. In December term, 1839, an action of a like character was heard at the suit of the partner not named in the foreign attachment, and decided against him by the supreme court of Pennsylvania, *Morgan* v. *Watmough*, 5 *Wharton's R.* 125. This case seems to have been well argued, and the doctrine in the New-England cases was especially urged as giving countenance to the action. Thus, whether the action has been brought by both partners or by one, it has so far always failed. Authority and principle are equally against it. I do not deny that there are *dicta* which look like a restraint on the sheriff. In *Crane* v. *French*, 1 *Wendell*, 313, it was said the sheriff does not deliver possession. With deference, *I do not see that the \*authorities will justify his refusal*    [ \*408 ] *to deliver possession*, either at law or in equity, except under the sanction of some court qualified to direct him in such a course. It is not necessary to deny that this court may do so under special circumstances ; though the power of this court, or even of a court of equity, to interfere and stay execution till an account shall be taken, cannot, I think, be sustained. It seems to me that Chancellor Kent was right in the case cited when he refused to stay a sale even in equity ; and that the advice of the English common pleas and other courts should be followed : that is, to let the sheriff take his course according to his undoubted legal right, selling the goods, and leaving the copartners and copartnership creditors to their relief in equity. I know that since the cases of *Dob* v. *Halsey* and *The matter of Smith* in 16 *Johns. R.* and *Crane* v. *French*, an impression has prevailed that the sheriff might be controlled by a motion ; and that this court might even stop him, and order an account. No case in any court has gone the length of saying that ; but it has again and again been denied ; and that sort of relief has often been refused. I remember nothing of the practice of this court ; nor do I believe that either justice or convenience calls for its adoption. It seems to me the English common pleas were right when they said the conflict between suitors for joint and separate debts can be settled by chancery alone. Creditors and partners not before the court must be made parties, complicated accounts for years must be settled, a large concern to be wound up perhaps. This court has neither the abstract power, the process, the officers, nor any of the proper machinery for prosecuting such a business. How is this court to decide on motion, even whether there be a partnership or not ? Be this as it may, however, and whether we ought ever to interfere summarily or not, the argument can have no bearing in favor of this novel remedy by *trespass* or *trover*.

Albany, October, 1240.—Phillips v. Cook.

My opinion is that a new trial should be granted ; the costs to abide the event.