WATSON
vs.
GABBY.

Case 29.

MOTION.

## Watson vs. Gabby.

### APPEAL FROM MASON CIRCUIT.

1. The bond which a claimant of property levied upon by execution is permitted to execute by *sec. 713*, of the Civil Code, must be executed to *the plaintiff in* the execution—not to an assignee of the benefit of the execution.

2. Upon the trial of the right of one claiming property levied on by an officer under execution, no pleading in writing is allowed. *Civil Code,* (sec 484.)

3. The right of an execution creditor to subject to levy and sale under his execution the interest of such partner in the effects belonging to the partnership is unquestionable. (*Phillips vs. Cook*, 24 Wendell, 394.)

4. If the other partner in such case claim the whole of the partnership effects for the benefit of the creditors of the firm, he must resort to a court of equity for a settlement of the partnership.

5. No judgment can properly be given, on motion, upon a bond given to an assignee of an execution by one who claims property levied on by execution. All proceedings must be in the name of the plaintiff in the execution.

[The facts of the case are stated in the opinion of the court. REP.]

*Harrison Taylor*, for appellant—

The bond which is the foundation of the judgment in this case was intended to be given under *sec. 713 of the Civil Code.* The appellee obtained judgment for the amount of the executions, with ten per cent. damages, according to *sec. 716 of the Civil Code.* Watson defended the suits or motion on the ground that Sargent, the defendant in the executions, and partner of Watson, had withdrawn from the partnership a sum equal to his interest in it, and that upon a settlement of the affairs of the partnership of Sargent & Watson that Sargent would have nothing which could be applied to the payment of the separate debts of Sargent. This defense is clearly made out, and he here seeks a reversal of the judgment which he deems erroneous.

The circuit court rejected a written answer offered by Watson, and rejected all the evidence offered by him, on the ground that he had mistaken his remedy.

The proceeding prescribed by the Civil Code is understood to be in substitution of the former mode of trying the right of property, when claimed by one who was not a defendant in the execution. The court directs the issue to ascertain that fact, and if the property or any part of it be found, by a jury to be empannelled to try the issues directed by the court, subject to the execution, the plaintiff may have judgment on notice, and motion for the value of the property and ten per cent. damages. (*Civil Code, section* 716.)

The issues prescribed by the court may be either legal or equitable, and made up by the ordinary mode of pleading, as the court may prescribe, unless its discretion is limited by *sec.* 484 of the same Code, which says that "*the motion shall be heard and determin-* ' *ed without written pleadings, and judgment given accord-* ' *ing to law and the rules of equity.*" This may be the general rule, but should be understood subject to the wide descretion conferred by *sec.* 716.

The proceeding upon the bond is an action within the meaning of the Code, and it is the duty of one against whom a judgment is asked, to interpose any defense which he may have, whether it be legal or equitable—his failing to do so might subject him to hazard.

The members of a partnership are entitled to none of its assets to apply to individual purposes, except what remains after paying all the partnership liabilities. (See *Story on Partnership, sec.* 97.)

As against the separate creditors of an insolvent member the other partners have a lien on the partnership effects for the benefit of creditors, and for any balance due to them individually. This lien is recognized both at law and in equity, and an execution creditor is bound to respect this lien also, as no

lien is created by his execution, but upon the balance due to the defendant in the execution after the prior lien in favor of partnership creditors, and partners are satisfied.

Is the solvent partner bound to surrender up to an officer who levies upon the interest of another partner to satisfy his individual debt, the goods, or other partnership effects, and permit them to be sold, and then sue the numerous purchasers; or may he not contest before the jury the right to sell, and thereby save the trouble that would ensue from suffering a sale to take place? It seems to be the design of the Code, (*sec.* 484,) that the liability of the effects to sale is to be determined according to law and the rules of equity."

The right of the execution creditor to sell the property should be determined before it is sold; every reason founded in justice and policy would require this to be done. The hardship to the solvent partner —saving multiplicity of suits—would be avoided.

Watson should be permitted also to show that Gabby is not the owner of the executions under which the property was taken, but that in fact Clark, who was legally bound with Sargent, furnished the money to pay to the attorney of the plaintiff, and that the attorney assigned the benefit of the executions to Gabby, to be collected for the benefit of Clark, the former partner of Sargent.

*Wadsworth*, for appellee.
No brief on file.

Jan. 11, 1858.    Judge DUVALL delivered the opinion of the court.

Upon three judgments which had been obtained by certain eastern creditors of Clarke and Sargent against them, executions were issued, and were subsequently assigned, by the attornies of the creditors, to Gabby, who directed the sheriff of Mason county to levy them upon the interest of Sargent in the goods, &c., belonging to the firm of Sargent & Watson, partners in the mercantile business at Mayslick.

The sheriff, being informed by Watson that his part-ner, Sargent, upon a settlement of the partnership accounts, would have no interest in the assets of the firm which could be applied to the payment of his separate debts, refused to levy the executions unless indemnified.   Gabby gave him the required indem-nity, and he thereupon proceeded to levy the three executions, as shown by his return, "upon the undi-' vided one-half of the goods in the store of Sargent ' & Watson, being one-half of the goods and mer-' chandize mentioned in the appraisement returned ' with the bond of John W. Watson and Apphia Pep-' per returned herewith, as the property of said Sar-' gent."   The return further sets forth, that after the levy Watson claimed the goods levied upon, caused the sale to be suspended by executing the bond pro-vided for by the 713*th section of the Civil Code.*   This bond appears to have been lost, but it is proved to have been executed to the assignee, Gabby, under the section of the Code referred to, which is as fol-lows:

"The sale of personal property upon which an ex-' ecution is levied, shall be suspended at the instance ' of any person, other than the defendant in the exe-' cution, claiming the property, who shall execute, ' with one or more sureties sufficient for double its ' value, a bond *to the plaintiff in the execution,* to the ' effect that if it shall be adjudged that the property, ' or any part of it, is subject to execution, he will pay ' to the plaintiff the value of the property so subject, ' and ten per cent. thereon, not exceeding the amount ' due on the execution, and ten per cent. thereon."

1. The bond which a claim-ant of property levied upon by execution is permitted to ex-ecute by *sec.* 713 of the Civil Code, must be executed to *the plaintiff in* the execution——not to an assignee of the benefit of the execution.

The two succeeding sections prescribe the mode in which the property levied on shall be appraised, and require the bond and appraisment to be returned to the circuit court of the county in which the levy was made.

The 716*th section* provides that the party to whom the bond is executed may move the court to which it is returned, for judgment thereon, upon ten days no-

tice; the court to direct a jury to be impannelled, who shall try such issues as may be prescribed. If the property, or any part of it, is found subject to the execut on, judgment shall be rendered for the plaintiff therein, for the value of the property so subject, and ten per cent. thereon, &c.

By *sec.* 717 either party may object, upon the trial, to the appraisment, and the jury shall find the value of the property.

Under the foregoing provisions of the Code, Gabby notified the obligors in the bond, (Watson and Pepper,) that he would move for judgment against them on the 23d day of the April term of the Mason circuit court. Upon the trial of this motion a jury was waived, and the law and facts submitted to the court, who rendered judgment in favor of Gabby against Watson and Pepper for $1,137 50, with interest, costs, and ten per cent. damages.

From that judgment the appellants have prosecuted this appeal, insisting on a reversal mainly upon the ground that the facts proved, and offered to be proved by them, as shown by the record, are not sufficient to sustain the judgment.

The record presents one or two questions which, although not necessary to the decisions of this case, it may be proper to notice.

The appellants were permitted to file an answer, or statement in writing, setting forth their grounds of defense to the motion, which answer was subsequently rejected by the court upon the ground that written pleadings were unauthorized in proceedings of this kind. We are of opinion that the answer was properly rejected. The proceeding cannot be considered an "action," as defined by the Civil Code, but comes more properly within that class of remedies denominated *special* or *summary proceedings;* and the 484*th section* expressly provides that motions of this character "shall be heard and determined without writ- ' ten pleadings, and judgment given according to law ' and the rules of equity." Besides, trials by juries

summoned by the sheriff or other officers, of the right of property taken by them under execution or distress warrant, are abolished, (sec. 727,) and the motion and trial by jury authorized by the 716th section was manifestly intended as a substitute for the ancient "trial of the right of property." It was therefore eminently proper that no written pleadings should be required, or even allowed in such cases.

The only issue to be tried by the court, in the case before us, was whether the property levied on was subject to the executions or not; and the same question is made in the argument here.

The right of an execution creditor to subject to levy and sale under his execution against a partner, the interest of such partner in the effects belonging to a partnership concern is unquestionable. In the language of the supreme court of New York, it does not appear to have been doubted in any age of the law, that the sheriff might take and sell the separate partner's interest. (*Phillips vs. Cook*, 24 *Wend*. 394.) This well settled principle does not seem to be controverted by the counsel for the appellant, but he insists that Watson, the other member of the firm, had a lien upon the assets for any balance due him by the partnership, and for the payment of debts due to other firm creditors; that this claim must be respected by the execution creditors of Sargent, because no lien attaches in their favor by virtue of their execution, except what may remain to their debtor after a settlement of the affairs of the partnership; and that such settlement should have been allowed to be made upon the trial of this motion, for the purpose of ascertaining how much, if any thing, was to be applied to the satisfaction of the executions.

A sufficient answer to this position is to be found in the utter unfitness of the tribunal provided by law, for the trial of such issues. The settlement of partnership accounts has always been the subject of equitable cognizance exclusively, and it is going rather too far, in the direction of liberal construction, to

3. The right of an execution creditor to subject to levy and sale under his execution the interest of such partner in the effects belonging to the partnership is unquestionable.— (*Phillips vsCook*, 24 *Wendell*, 394.

4. If the other partner in such case claim the whole of the partnership effects for the benefit of the creditors of the firm, he must resort

WATSON
*vs.*
GABBY.
to a court of
equity for a set-
tlement of the
partnership.

say that by the enactments referred to the legislature intended to confer the powers of a court of equity upon a jury in the country, which would enable them to investigate and pass upon the complex and intricate questions which such settlements always involve. In our judgment, therefore, the court below properly rejected all the evidence offered for the purpose of showing the condition of the firm, or of the state of the accounts between the partners. A court of equity should have been appealed to for the ascertainment of partnership balances, and for the enforcement of partnership liens. At what stage of the proceeding under the execution the aid of the chancellor should have been invoked, whether before or after a sale should have been completed by the sheriff, it is not necessary here to determine. It is sufficient to say, that if the bond executed by the appellant and his surety is to be regarded as a valid statutory obligation, the judgment complained of would have to be sustained.

And this brings us to the consideration of the radical and vital question presented by the record, whether the bond, which is the foundation of this proceeding, was executed in conformity with the requirements of the 713*th section of the Code*, and whether it is enforcable as a statutory obligation, by the summary proceeding adopted?

In examining this question we shall not stop to enquire whether the attornies of the plaintiffs in the executions had any authority to assign them to the appellee, or whether, in view of the facts disclosed by the record, he became the beneficial owner of the execution debts, by virtue of the assignment. It may be assumed that he became the equitable proprietor of the debts, and thereby acquired the right to control the executions.

According to the explicit and unambiguous terms of the section before quoted, the person claiming the property may suspend the sale by executing bond with one or more sureties, *to the plaintiff in the execu-*

*tion,* to the effect, &c.; and by the succeeding section, "the *party to whom the bond is executed* may move ' the court to which it is returned for a judgment ' thereon," &c.   The *legal* owner of the execution is entitled to the bond, and he alone is authorized to move for judgment upon it.

The assignment of an execution passes nothing but an equity to the assignor, and all proceeding upon such execution, whether at law or in equity, must be in the name of the plaintiff.   The equitable owner may, it is true, unite with the plaintiffs, as a party to such proceeding, but the latter are indispensable parties either as co-plaintiffs, or as defendants. Such has always been the rule of practice, as well before, as since the adoption of the Code, and the reason upon which it is founded applies with great propriety to the point we are considering.   This remedy by motion is a summary one, and the stringency of its operation, under certain circumstances, is well illustrated by this case.   The executions are levied upon goods which the appellant believes to be his, and the sale of which he desires to suspend in the mode prescribed by law.   To whom shall he execute the bond?   Did the law make it his duty to execute it to any intermeddler who might claim an interest in the executions, and the right to control them, under an assignment or otherwise?   This question is answered by the Code itself, in terms so decisive and emphatic, that nothing is left for argument or construction.   The bond should have been executed to the "plaintiffs in the executions," and to them alone.   And in that case, if Gabby had been able to manifest his equitable right under the alleged assignment, the bond would undoubtedly have inured to his benefit, and he might have proceeded upon it, but, as in all similar cases, he must have proceeded in the names of his assignors; at any rate they are necessary parties to such proceeding as plaintiffs or defendants.   He could no more have demanded the execution of this bond, or have moved for judg-

ment upon it, in his own name alone, in virtue of his mere equity, as assignee, than he could have required the clerk to issue the executions in his own name.

Our conclusion therefore is, that the bond in this case was not executed in conformity with the Civil Code; that it was not, for that reason, enforcable as a statutory obligation, and consequently, that no valid judgment could be rendered against the obligors upon this motion.

5. No judgment can properly be given, on motion, upon a bond given to an assignee of an execution by one who claims property levied on by execution. All proceedings must be in the name of the plaintiff in the execution.

Whether it be enforcable as a common law bond, by appropriate action, and what defenses, legal or equitable might be relied on by the appellant, to defeat or bar such action, are questions in regard to which it would be premature to intimate any opinion.

The judgment is therefore reversed and the cause remanded with directions to dismiss the motion.