SMITH and another, assignees of Mc. JIMSEY v. JACKSON
and others.

Where parties buy real estate with joint funds for partnership purposes, there is no right
of survivorship in the lands. Upon the death of one partner intestate, his share descends
to his heir.

There are instances, however, of lands held for partnership purposes which will be con-
sidered in equity as personalty and be applied accordingly. Thus,. it may be agreed by
the partners themselves to be so considered ; and this agreement will work the change ;
and the same will go as personalty on the death of one partner. But if a purchase be
made and a conveyance taken to partners as tenants in common, without any agree-
ment to consider it as stock, although it be paid out of their joint funds and to be used for
partnership purposes, it will be deemed real estate.

As respects the rights of joint creditors of a firm, it is immaterial whether land assumes
the character of real or personal estate in becoming partnership property. In either case,
it is liable to the partnership debts. But it will not be considered as partnership property
liable to co-partnership debts by the mere taking a deed in the joint name of two persons
who are partners. It must be done by some express act or understanding.

J. and Mc J. were partners as merchants. They bought in a house and lot upon a mort-
gage sale, with a view to secure a debt due their firm ; they bought other real estate up-
on speculation, paying for it out of partnership funds and debitting it to "*merchandize ac-
count*" ; and they also took up money upon mortgage of the properties, which was put
into the same account. They failed in business. Then J. (one of the partners) died, in-
testate. The surviving partner, Mc J., conveyed, to trustees, all his rights in the above
real estate for the benefit of the creditors of the firm. Forclosures upon the mortgages
executed by the partners had been carried through, and a balance of the funds remained
in court : IT WAS HELD, that the real estate was to be considered as co-partnership pro-
perty and the funds in court liable to partnership purposes.

As the rule is well established that the joint property of the partnership must first be ap-
plied to the payment of the joint debts, therefore the administrator of J. was not entitled
to any part of the funds in court for the benefit of the separate creditors or next of kin
The right to any balance would be in the heir at law of J.

*It was also held* : that the widow of J. was entitled to a right of dower. But having joined
her husband in the mortgages, she now had an equitable right of dower in a moiety of
the equity of redemption and balance in court.

*April,*      This case involved a question as to the effect of a pur-
1833.     chase of real estate by copartners.

*Partner-*     Alexander C. Jackson and Robert Mc. Jimsey had been
*ship.  Real* copartners in trade, under the firm of Jackson & Mc. Jim-
*Estate* sey. While they were such partners, they purchased a
*bought by* large amount of real estate with the funds of the co-partner-
*partners.* ship ; and they both joined in mortgaging the same property.
*Dower in it.* One of their purchases of such real estate consisted of thir-

ty-seven lots of land and they debited the amount of purchase to "Merchandize account." All this real estate had been since sold, under decrees of foreclosure, arising from the mortgages made by Jackson and Mc. Jimsey; and surplus monies remained in Court.

On the first day of June one thousand eight hundred and thirty-one, the firm of Jackson and Mc. Jimsey stopped payment; and on the twenty-fourth day of December following, Jackson died, leaving a widow and several infant children.

About the tenth day of September, one thousand eight hundred and thirty-two, Mc. Jimsey, for himself and as survivor of the firm of Jackson and Mc. Jimsey, assigned and conveyed to the complainants, in trust for the benefit of the co-partnership creditors of Jackson and Mc. Jimsey, all the right, title, estate and interest of him, the said Mc. Jimsey, in the lands, premises and proceeds before referred to; together with a large amount of other property.

Some time in the month of September one thousand eight hundred and thirty-two, Robert Mc. Jimsey confessed a judgment in favor of the complainants; they entered up the judgment, and issued an execution, which was returned *nulla bona.* The complainants had filed, with the record of the judgment, a declaration which specified that such judgment was held by them in trust, to be applied to the same uses and purposes as were contained in the before mentioned deed of assignment; and they now sought to obtain, as trustees, all the balance of funds which had been brought into Court under the foreclosure suits. The widow and infant children of Robert Mc. Jimsey were made parties, as well as Mr. Sylvanus Miller, the public administrator, in consequence of his having administered upon the estate of Alexander C. Jackson.

Mr. *Jesse Hoyt,* for the complainants.

Mr. *O. Bushnell,* for the widow Ann P. Jackson.

Mr. *J. F. Mitchell,* for the public administrator.

Mr. *R. R. Ward,* for the defendant Robert Mc. Jimsey.

*Mr. Richard J. Wells,* for the infant children of Alexander C. Jackson.

**THE VICE CHANCELLOR :—**Messrs. Jackson and McJimsey held several parcels of land, under the conveyances to them, in their joint names, as tenants in common, and *prima facie,* in equal moieties. Yet, although the purchases were made out of their joint funds, and, even supposing the same to have been intended as partnership transactions or for partnership purposes, it is a well established rule that there is no right of survivorship in the lands, but, upon the death of one partner intestate, his share descends to his heir at law.

There are instances, however, of lands, held for partnership purposes, which will be considered in equity as personal property and be converted and applied accordingly. On this subject, in the English Chancery, there has been a diversity of opinion. Lord Thurlow held, in *Thornton* v. *Dixon,* 3. Bro. C. C. 199. (contrary to his first impression) that in order to warrant a conversion of the real estate, which had been purchased and held for the purposes of partnership, into personalty, upon the death of one of the partners, there should be an express agreement for the sale and change of the property : otherwise, upon the dissolution, the property of the partnership would result, according to its nature—the real as real and the personal as personal estate. Upon the authority of this case, Sir William Grant decided, by the cases of *Bell* v. *Phyn,* 7. Ves. 453. and *Balmain* v. *Shore,* 9. Ib. 500., in favor of the representatives of the real estate : he being of the opinion with Lord Thurlow that the circumstance of purchasing real estate with partnership funds and for the business of the partnership did not alter its nature or prevent its descent to the heir at law.

Lord Eldon is reported to have entertained different views on the subject ; and by his decisions in *Ripley* v. *Waterworth,* 7. Ves. 425. and *Townsend* v. *Devaynes,* reported in 1. Mont: on Part. App. 97., especially by the last case, he appears to have decided that the freehold of premises, purchased by partners for the purpose of carrying on the business in which they were engaged, was, on disso-

*1833.*

SMITH
v
JACKSON.
*Nov.* 11*th.*

lution, by death or otherwise, to be considered as personal estate; and see *Gow on Partn.* 52.; *Collyer on Partn.* 76.; also, 2. *Hovenden, Supp.* 40, 41. These were cases in which the question arose between the representatives of the real and the representatives of the personal estate and wherein the rights of creditors were not immediately involved. They were, moreover, cases of real estate purchased with partnership funds and held for the purposes of and as being necessary to the partnership business or trade; and in all such cases, whether the property is to be regarded in equity as real or convertible into personal estate depends upon the agreement of the parties. If, at the time of forming the partnership, they agree to invest a part of their capital in the purchase of real estate for partnership purposes or should at any time afterwards find it expedient to do so and agree between themselves that, upon the dissolution, the real as well as personal estate shall be sold and turned into money for the purpose of paying the partnership debts and closing their joint concerns, there the court of Chancery, acting upon the agreement and considering that as done which was agreed to be executed, is warranted in regarding the whole as personalty, either in reference to the claims of creditors or the rights of the heir or next of kin of a deceased partner.

In *Coles* v. *Coles*, 15. J. R. 159. our Supreme Court has said, there may be special covenants and agreements entered into between partners relative to the use and enjoyment of real estate owned by them jointly and the same will be considered as held subject to such agreement, but, in the absence of such agreement, the real estate owned by the partners must be treated as such, without any reference to the partnership. Chancellor Kent remarks, with respect to the decision of this case, and which was based upon Lord Thurlow's and Sir William Grant's opinions in those before cited, that it is a subversion of the more modern doctrine of the court of chancery in England (and see 3. Kent's Com. 37. 2nd. Ed.) But, however this may be, there is nothing in *Coles* v. *Coles* to prevent the court of chancery from giving effect to any express agreement which may be found to exist between partners concerning their purchases of real estate. It is certainly competent for them, by agreement between them-

1833.

SMITH
*v.*
JACKSON.

selves, to change the character of such property. It may be purchased and brought in as stock, and be considered personalty. But, if a purchase be made and a conveyance taken to partners as tenants in common, without any agreement to consider it as stock, although it be paid for out of their joint fund, and to be used for partnership purposes, I am of opinion it must still be deemed real estate. The law will certainly so regard it and equity cannot interfere to alter its character, except upon the ground of an agreement. The decisions in the American Courts, where this doctrine has been discussed (perhaps, with one exception) proceed upon this principle. Thus, in *Mc. Dermot* v. *Lawrence*, 7. Serg. & R. 438. it was held that the mortgagee of the share of one partner in real estate, taken and held by the partnership for the purpose of carrying on the business of the joint concern, without notice of partnership debts existing at the time of executing the mortgage, was entitled to the benefit of the mortgage security, without being subject to the debts owing by the partnership, and this, upon the ground that, as between the mortgagee, and the partnership creditors, the property was to be considered as real estate; although Chief Justice Tilghman observes, there is no doubt that, by the agreement of the parties, property of that description might be brought into stock and considered as personal property, so far as concerns themselves and their heirs and personal representatives. The cases of *Goodwin* v. *Richardson*, 11. Mass. R. 469., *Forde* v. *Heron*, 4. Munf. 316. and *Delorsey* v. *Hutcheson*, 2. Rand. R. 183. appear to have been decided upon similar principles. The case of *Greene* v. *Greene*, before the court of Ohio (1. Ham. Rep. 244.) marks more clearly the distinction arising from an express agreement of the partners. There, a bill was filed by a widow for dower in the real estate of her husband, who had been in partnership with the defendants. The property was purchased and the deed taken in the name of the partners, but it was bought with partnership funds and for partnership purposes. The articles of co-partnership contained a stipulation that upon the dissolution of the partnership, all the property of the concern should be sold and the proceeds applied, in the first instance, to the payment of debts due from the partnership.

It was held that the agreement in equity converted the land into personalty as between the partners and their creditors and subjected it to all the liabilities of their joint stock in trade; that, according to the original understanding of the parties, it was to be treated as partnership property and not an estate in land held in common; and that, at the moment of the acquisition of the property it was subject to the condition or agreement of the partnership, which qualified the estate of the husband and so that he had no substantial interest at his death (the partnership then being insolvent) and there was nothing upon which her right of dower could attach.

This is an instance where, upon the footing of an agreement, the equitable doctrine was applied whereby real estate was considered as being converted into personalty, for the purpose of satisfying partnership debts, and where the surplus, if any, would be permitted to go to the personal representative of the deceased partner to the entire exclusion of the widow in respect to dower and the representatives of the real estate; while the former are cases which go to show in the absence of any such agreement, that lands purchased and held by a partnership, even for the purposes of the firm, will, as between the representatives of the real and personal estate of a deceased partner and between the creditors of the firm and a separate creditor who has acquired a lien by mortgage or otherwise upon the individual share of one partner, in good faith, be considered as real estate both in law and in equity.

Upon no other ground than this, I apprehend, can the decisions of the several courts be reconciled; and I see no difficulty in the rule which they so clearly indicate of considering the legal estate in freehold property, purchased by partners for the purposes of their trade or by way of a commercial speculation, as real estate passing by devise or descent in the ordinary course; at the same time, the equitable interest in such property, arising from an express agreement or the clear and manifest intention of the parties, is to be deemed part of the partnership stock, subject to the partnership debts and liable to be applied accordingly.

Collyer, in his elaborate treatise before cited, remarks that

5

1833.

SMITH
*v.*
JACKSON.

upon the result of the English cases this seems to be the better opinion.

In *Winslow* v. *Chiffell*, Harper's E. Rep. of So. Carolina, 25. the majority of the court, on an appeal, held it immaterial whether land assumes the character of the real or personal estate in becoming partnership property, as respects the rights of joint creditors of the partnership: for, if land under either character becomes partnership property, it must, upon principles, be liable to partnership debts. This is doubtless correct; and the doctrine can well be applied, when it is ascertained the lands have become partnership property: yet I think lands can only be rendered so, by some express agreement and understanding of the several partners, and not merely by purchasing with joint funds and taking the title in their joint names—for, in legal contemplation, this would only be creating a tenancy in common in lands, with all the incidents of real estate.

In the case now under consideration, there is sufficient evidence, from the entries in the partnership books and from other circumstances, that Jackson and Mc. Jimsey must have understood and intended the purchases to have been held as partnership property. One house and lot they bought-in upon a mortgage sale, with a view of securing a debt due their firm and the other parcels of land in question they bought upon speculation; the purchase money (paid out of their partnership funds on account of the purchases) were charged in their books to the debit of merchandize, while the money taken upon mortgage was, in like manner, credited as advance upon merchandize—thus, treating the transactions in the light of ordinary commercial transactions relating to goods or merchandize and as being within the scope of their partnership business. There was another purchase they made of real estate and which was altogether different, although paid for out of the joint funds: for, there the conveyances were to them in severalty and each was charged in the books with an equal amount of cash to pay for the same. And in the answer of the surviving partner, Robert Mc. Jimsey, it is stated that just before Jackson's death, they had determined to sell the property in question for the purpose of applying the proceeds towards paying their partnership debts. Mr. Jackson's decease prevented it.

Under these circumstances, I think that the real estate, thus purchased and held jointly, may be considered as partnership property and the proceeds liable to be applied to partnership purposes. It was so considered by Mc. Jimsey in making the assignment to the complainants in trust for the purpose of completing the composition previously agreed upon with the creditors. As these creditors are willing to come under the assignment and set up no claims upon the funds in this court adverse to it, there can be no difficulty in making a decree for distribution of the whole of the partnership property among the creditors through the medium of the complainants, as assignees.

The rule is well established that the joint property of the partnership must first be applied to the payment of the joint debts. Hence, the administrator of the deceased partner is not entitled to any part of the funds in court for the benefit of his separate creditors or next of kin. Even though one half or more of these funds were to be regarded as belonging to the individual estate of the deceased partner Jackson, the same being proceeds of real estate, his personal representative could not be permitted to take, since the right would be in the heirs at law.

In no point of view, therefore, has the defendant Miller, as administrator, any claim upon the fund in court.

The next point is, with regard to the claim of dower on the part of the defendant Ann P. Jackson, the widow of the deceased partner. Although the lands were partnership property and the transactions relative to their purchase were of a commercial nature and the proceeds (under the circumstances) are liable to be applied to the satisfaction of the joint debts, yet, in a strict sense, they were real estate and subject to its incidents. The partners were respectively seized of a legal estate of inheritance in the lands as tenants in common, notwithstanding it was to be treated as partnership property; and the right to dower attached as an incident to the legal title and seizin. On this account it became necessary for Mrs. Jackson to unite with her husband in the mortgages. She had still a right of dower in the equity of redemption. This right was not entirely lost by the foreclosure and sale. It attached in equity to the surplus, after

satisfaction of the mortgage debt.  Instead of legal, it then became equitable dower; and which no act, by the husband, could impair, without her concurrence: *Titus* v. *Neilson*, 5. J. C. R. 452.

In reference to the case of *Smith* v. *Smith*, 5. Ves. 189., Mr. Park, in his treatise on Dower, 106. observes, that "if "lands of inheritance are purchased with partnership pro-"perty and conveyed to one partner only, *prima facie* he is "a trustee for the partnership, and, upon a dissolution, the "lands would be distributable among the partners as co-"partnership property.  But as the partner in whose name "the conveyance was taken has the legal estate, coupled "with the beneficial ownership in his own share, and as part-"ners are tenants in common in equity of real estate purcha-"sed for the purposes of trade, it is apprehended that his "wife is entitled to dower of this share."  I am disposed to adopt this as the correct conclusion.  Upon applying it to the present case, Mrs. Jackson is entitled to dower in the share of the estate, of which the legal title was coupled with a beneficial ownership in her husband, notwithstanding it was partnership property.  It can only extend, however, to a moiety.  The legal title was not in him beyond this, although his interest in the partnership was a two-thirds.  Her dower may be estimated upon the principle of a life annuity; and a gross sum can be paid over or one-third of a moiety of the fund be invested for her use—at her election.

My conclusion on the last point may not seem to be recon-cileable with the decision in the Ohio case of *Green* v. *Green*, where the court proceeded mainly upon the effect of the spe-cial agreement in the articles of co-partnership and as to its being sufficient to prevent any right of dower from attach-ing upon the land.  If that decision can be supported upon principle, I apprehend it can only be done through the partic-ular circumstances of the case.  It is sufficient to say, the facts in the present suit are different.