MARTIN, appellant, v. WAGENER *et al.*

*Partnership — judgment against firm is a lien upon firm property in preference to prior judgment against individual partner.*

The appropriation of partnership property by judgment, execution and sale against all the partners in payment of a partnership debt, confers a perfect title upon the purchaser of real estate belonging to the firm, as against the general lien of a judgment of prior date docketed against an individual partner for his private debt.

And no presumption arises that, at the time of docketing the judgment against the individual partner or afterward, there was a residuum or ratable share in such partner to be bound by the judgment against him, so as to affect or qualify the title obtained by means of the partnership judgment, or to subject such title to contribution in the interest of the individual creditor.

W. purchased real estate belonging to a firm upon an execution sale under a judgment against the firm. *Held,* that the title of W. was not subject to the lien of a prior judgment against one of the partners, and W. was not liable to contribute to the owner of real property previously belonging to the partner individually, and which had been sold to satisfy the prior judgment.

The fact that the firm indebtedness arose after the prior judgment against the individual partner was docketed, made no difference as to the liability of the firm property.

A grantor, by deed, conveyed real estate to himself and another. Whether the grantor, by such deed, took any interest, *quaere?*

ACTION for contribution under 2 R. S. 375, §§ 70, 72, and to determine the rights of purchasers under several executions against the same judgment debtor.

On the 26th of September, 1854, and prior to that time, Stanley Martin & Russell Martin were copartners in the mercantile business at Olean, Cattaraugus county. The partnership continued until January, 1866, when, in consequence of a fire, they ceased business as a firm. No formal dissolution of the firm, however, ever took place.

On the 26th of September, 1854, Frederick Martin and wife conveyed to Stanley Martin & Russell Martin a part of lot 18 in block 85, in Olean aforesaid, and on the 18th of March, 1859, Russell Martin and wife conveyed to Stanley Martin & Russell Martin another part of lot 18, and also lots 17, 19, 20, 21 and 22 in said block, which property was then owned by the grantor. After these conveyances, the property conveyed was used by the firm for partnership purposes, and the consideration for its transfer was partnership property.

In May, 1866, Russell Martin was the owner of certain real estate in Olean, being an undivided one-seventh part of what was known as the "Martin Homestead." A short time afterward he acquired title to two-thirds of another one-seventh part.

On the 17th of May, 1866, Joseph W. Upham recovered a judgment which was docketed in Cattaraugus county May 22, 1866, for $1,540.50 against Russell Martin and Alfred Tallent.

On the 16th of October, 1866, Russell Martin conveyed his inter-

est in the "Martin Homestead" to the plaintiff in this action, George Martin and Clarissa Martin, in pursuance of a contract previously entered into.

On the 13th of June, 1867, the First National Bank of Titusville recovered a judgment against Russell Martin, and on the 24th of July, 1867, Orrin Lawrence recovered a judgment against Stanley Martin and Russell Martin, which last-named judgment was upon a firm indebtedness contracted in May, 1867.

On the 2d day of November, 1867, the sheriff of Cattaraugus county, by virtue of an execution issued upon the judgment in favor of the Bank of Titusville against Russell Martin, sold the debtor's interest at the date of the docketing of the judgment in June, in lots 17, 19, 20, 21 and 22, to Charles S. Carey. The purchaser subsequently assigned the sheriff's certificate to the defendant Truman R. Coleman, who, on the 8th of February, 1869, received a sheriff's deed for the property sold.

On the 9th of November, 1867, the sheriff sold, by virtue of an execution upon the judgment of Lawrence against the Martin firm, the interest of the firm in the part of lot No. 18 previously conveyed to them, and also their interest in certain lots of the "Holland Land Company Lands" to Charles S. Cary. The purchaser subsequently assigned the certificate of sale to the defendant Rebecca Wagener, who received a sheriff's deed February 4th, 1869.

The judgment in favor of the Titusville Bank not having been satisfied by the sale under the first execution, a sale was made by the sheriff, July 10, 1869, of the interest of Russell Martin in the part of lot 18 conveyed to the Martin firm. At this sale the defendant, Francis B. Brewer, was the purchaser.

On the 15th of July, 1871, the sheriff, by virtue of an execution upon the Upham judgment against Russell Martin and Alfred Tallent, sold Russell Martin's interest in the "Martin Homestead" as it existed previous to the conveyance to the plaintiff and Clarissa Martin together with his interest in lots 17, 19, 20, 21 and 22, as it existed at the time of docketing said judgment, and thereafter to the defendant Rebecca Wagener. On the 1st day of August, 1871, plaintiff and Clarissa Martin, by the payment of a certain sum redeemed the "Homestead" property, and the defendant, Truman R. Coleman, likewise redeemed the lots 17, etc.

The plaintiff and the said Clarissa Martin having filed the affidavit required by the statute, and Clarissa Martin having assigned her

interest in the matter to plaintiff, this action was brought to compel the parties named as defendants, viz., Truman R. Coleman, Francis B. Brewer and Rebecca R. Wagener, to contribute toward the payment of the moneys paid to redeem by plaintiff and Clarissa Martin. Russell Martin was also made defendant but did not appear in the action. He was substantially insolvent at the time.

The court before whom the action was tried found, as matter of law, that the title of the defendant Wagener to the part of lot 18 sold under the Lawrence judgment against the firm was superior and paramount to any claim, legal or equitable, of the defendants Coleman or Brewer thereto, and that the defendant Wagener held the same free and clear of any lien or claim of the plaintiff or either of said defendants, and directed the complaint to be dismissed.

The plaintiff and the defendants Coleman and Brewer appealed. The plaintiff afterward discontinued the appeal on his part.

*D. H. Bolles*, for appellants Coleman and Brewer. The principle that partnership property is to be devoted to the payment of partnership debts is not applicable to the case of a conflict between judgment liens on real estate. *Meech* v. *Allen*, 17 N. Y. 300; *Stevens* v. *Bank of Central New York*, 31 Barb. 290; *Kirby* v. *Schoonmaker*, 3 Barb. Ch. 46; *Blake* v. *Nulter*, 19 Me. 16; *Cook* v. *Banker*, 7 Alb. L. J. 230. The indebtedness on account of which the Lawrence judgment was entered was not contracted until May, 1867, and the defendant Wagener cannot appeal to the rule of appropriating partnership property to the payment of partnership debts as against demands existing and a transfer of property made in 1866. *Matter of Howe*, 1 Paige, 128; *White* v. *Carpenter*, id. 217; *Sanford* v. *McLean*, 3 id. 116; *Kierstiad* v. *Avery*, 4 id. 8.

*Angel & Jones*, for respondent. Partnership debts must be satisfied and the affairs of the firm adjusted between the partners before the creditors of the individual partners have an equitable right to any part of the partnership effects. *Buchanan* v. *Sumner*, 2 Barb. Ch. 165; *Collumb* v. *Read*, 24 N. Y. 505. The respondent Wagener occupies the place of a judgment creditor of the firm, and cannot be called upon to contribute toward the payment of an individual debt of one of the partners. *Crane* v. *French*, 1 Wend. 311; *Dunham* v. *Murdock*, 2 id. 553.

E. D. SMITH, J. The questions arising upon this appeal are so fully examined and discussed by the learned judge who tried the cause at special term in the careful and able opinion then delivered by him, in which I fully concur, that I think it unnecessary and inexpedient for this court to do more than adopt such opinion as the opinion of the court, and affirm the judgment with costs.

The following is the opinion delivered at special term:

LAMONT, J. Statutory regulations require the lands of a judgment debtor, subject to the general lien of a judgment, to be sold on the execution in the inverse order of alienations for the protection of the early purchasers of the same lands from the judgment debtor. 2 Rev. Stat. 376, § 71. The lands still remaining in the debtor's hands being first liable. *Cleus* v. *Dickenson*, 5 Johns. Ch. 235.

A purchaser whose rights have not been regarded by observing the prescribed order of sale under judicial process is entitled to come into a court of equity and compel the lands primarily liable to make contribution. 2 Rev. Stat. 375, §§ 70, 72.

For such purpose a purchaser may, by filing an affidavit and causing an entry to be made in the docket of the judgment thus inequitably used to his injury, by means of a species of statutory subrogation, stand in the place of the judgment creditor, and have the use and lien of this judgment to the extent that will be necessary to enforce a just and equal contribution out of lands that ought first to have been sold, or that ought to make contribution. 2 Rev. Stat. 376, §§ 73, 74.

The plaintiff has, by following the directions of the statute, placed himself in the attitude of an owner of the Upham judgment for this purpose, which is the oldest judgment of all.

He claims contribution out of the undivided half of a part of lot 18 in block 85, in the village of Olean, to which the defendant Wagener has obtained title by sheriff's deed on an execution sale upon a junior judgment. As the interest of the plaintiff George Martin, and of Clarissa Martin, to all whose rights the plaintiff has succeeded in the homestead lands which Russell Martin conveyed to them, was subject to the lien of the Upham judgment when so conveyed, it would follow that the undivided half of this part of lot 18, the land in question, which Russell Martin had not then conveyed, would be first liable to be sold on that judgment, if some

other rule does not take it out of the common course. Both undivided halves, or in other words the whole of that part of lot 18 described in the complaint, was partnership property belonging to the mercantile firm of Stanley Martin and Russell Martin, from a period long anterior to the recovery of the oldest judgment, and so continued until the sheriff's deed of it to the defendant Wagener. The facts are as found in the decision of the case. From 1859 it had been in the notorious possession of the partnership. The judgment of Upham, under which the plaintiff claims, was recorded in 1866, and the Lawrence judgment, under which the defendant Wagener got her title, was recovered in 1867. The plaintiff's judgment, *i. e.*, the Upham judgment, was against Russell Martin and one Alfred Tallent, and for an indebtedness in no way connected with the partnership concerns. The Lawrence judgment, junior in point of time, under which the defendant Wagener claims title, was recovered for an indebtedness of the partnership on their two acceptances of May, 1867, and was entered and docketed against Stanley Martin and Russell Martin, both the partners.

The state of the legal title to this part of lot 18 mentioned in the complaint was as follows, when the judgments were recovered: In 1854 Frederick Martin, then the owner, and his wife, conveyed the south-east corner, a piece 40 by 90 feet, to Stanley Martin and Russell Martin, by their names in the usual form of warranty deed. In 1859 Russell Martin, then the owner, and his wife, as grantors, conveyed the remainder, by the usual form of a warranty deed, to Stanley Martin and Russell Martin. In this deed Russell Martin was both a grantor and one of the two grantees. The plaintiff claims that the latter deed vested the legal title in the two grantees as tenants in common, the same as the former one. For present purposes I shall assume that to be the correct construction and the legal effect of the conveyances.

Now the question comes whether the sale of the partnership real estate, under execution on a junior judgment against the partners for a firm indebtedness, conveys a better title to the whole than a sale of one partner's interest in the same lands on an execution issued upon a senior judgment against such partner for his private debts or a debt not connected with the partnership affairs, conveys to the undivided half which he is claimed to have held by legal title as a tenant in common.

The plaintiff represents a creditor by judgment against an indi-

vidual partner for his separate indebtedness. The defendant Wagener represents a creditor by judgment against the whole partnership for a firm indebtedness. The general rule is understood to be that partnership property is primarily liable to pay partnership debts, and no one partner has any right or share in the partnership property except what remains thereof after the full discharge and payment of all debts and liabilities of the partnership, and, therefore, every partner has a right to have the same applied to the due discharge and payment of all such debts and liabilities before any one of the partners or his personal representatives, or his individual creditors can claim any right or title thereto. Story on Part., § 97. The same law applies to real as to personal property in this respect, and it is quite immaterial whether the title to the realty be in one or in several or in all the partners, or in some third person for their benefit. Perkins' Collyer on Part., § 135.

In *Buchan* v. *Sumner*, 2 Barb. Ch. 165, real estate had been conveyed to the two individuals composing a partnership by deed in the usual form in satisfaction of a partnership debt. A judgment had been recovered and docketed against one partner and a third person for a debt not connected with the partnership business, and thus became a legal lien on the interest of that partner who was one of the defendants in the judgment. Upon the winding up the affairs of the copartnership the other partner had to pay out to the creditors of the firm about $5,000 beyond the ratable proportion of the debts. The real estate was sold on foreclosure of a mortgage prior in date to the conveyance made to the partners, and the judgment creditor of the one partner claimed the remaining surplus by virtue of the legal lien of his judgment over the right of the other partner whose claim, as decided by the chancellor, was only his equitable rights to have sufficient of the surplus to equalize the shares of the partners as between themselves.

The chancellor held that the real estate, by the fact of its being taken for a copartnership debt, was to be considered as partnership property; that the legal title was held in trust for partnership purposes, and the real estate was in equity to be treated as the property of the members of the firm collectively, and as liable to all the equitable rights of the partners as between themselves, and that for this purpose the holders of the legal title are considered in equity as the mere trustees of those who are beneficially interested in the fund,

not only during the existence of the copartnership, but also upon its dissolution by the death of some of the copartners, or otherwise.

He said: "It is a settled principle of the law of partnership that the partnership effects are to be applied, in the first place, to the payment of the debts of the firm, and to equalize the claims of the different copartners in relation to the fund. In other words, the separate estate or interest of a copartner in any of the copartnership property is only his share of that part of the copartnership effects, or the proceeds thereof, which remains after the debts of the firm and the demands of his copartners as such are satisfied. And if one of the copartners has paid more than his share of the partnership debts he has a claim upon the partnership property, which claim in equity is paramount to the claims of the separate creditors of his copartners." It was also said that "The court of chancery will so control the legal lien of judgment creditor as to restrict it to the actual interest of the judgment debtor in the property, so as fully to protect the rights of those who have a prior equitable interest in such property, or in the process thereof," and the conclusion was that the partner who was creditor of the firm was awarded the whole surplus money.

The claim of the defendant Wagener, in the present case, stands as that of a judgment creditor of the firm, and such creditor in chancery has an equity above that of an individual partner for an excess of advances or payment of firm debts beyond his due proportion. The defendant Wagener has a preferable equity in the present case to that of the partner *Naylor* in the case cited for as there held. The partnership effects are to be *first* appropriated to the payment of the firm indebtedness, and in the *second place, only* to equalize the claims of the different copartners in relation to the fund and the share due to each partner so ascertained, is alone liable to his separate creditors.

A circumstantial difference between *Buchan* v. *Sumner*, and the present case, is, that the partner Naylor, in that case, had paid out $5,000 in excess to his just proportion to the firm creditors in winding up the affairs of the partnership, which occurred before the judgment was recovered against the other partner. It would appear that the interests of the respective partners had thus been ascertained. In the present case the Upham judgment, under which the plaintiff claims, was recovered and docketed the year before the acceptances of the firm were given, for which the Lawrence judgment was en-

tered, and no accounting has been had between the partners. The plaintiff urges that his legal lien was perfect on the share of Russell Martin in the land in May, 1866, and that such lien is prior in point of time to the claim of the defendant Wagener, under the Lawrence judgment of July, 1867, for the partnership debt, and is therefore to be preferred.

As to judgments against a firm and other judgments against its individual members, recovered from time to time, it might prove to be a difficult, if not impossible, undertaking to go back and ascertain what the equitable interest of one partner was at a date in former years, where no account has ever been had as in this case at any time. It would be necessary, in order to determine the fact, to show how much property the firm, at such a date, possessed, how much the concern then were indebted and how much each partner had advanced, paid out or withdrawn. In other words, there must be a perfect accounting as of that date. It is reasonable that a creditor, if an individual partner who claims a judgment lien upon his share as attaching at some past date should shoulder the burden of proving that such partner had a share, and what such share was when he claimed adversely to a judgment creditor of the partnership who has, by execution and sale, appropriated partnership property to pay a partnership debt, but why confine the creditor of the individual partner to the latter's share or residuum in the estate as it existed at the date of docketing his judgment. If the principle contended for is sound, the lien attaches to the partner's share, on each and every day after the docket, as well as to share existing on the first day of the entry of the docket. In the varying phrases of partnership transactions from day to day and from week to week and month to month one individual partner's just share is undergoing continual changes in quantity of interest, waxing and waning like the moon. It is possible that the general lien of a judgment fastens itself on this ever shifting proportion, undetermined, if not in most cases undeterminable. If such be the case, then a partnership debt stands upon a precarious foundation. I think, on principle and on the authority of the cases, some of which are hereafter referred to, that the appropriation of partnership property by judgment, execution and sale against all the partners, in payment of a partnership debt, confers a perfect title upon the purchaser of real estate belonging to the firm, as against the general lien of a judgment of prior date docketed against an individual partner for his separate debt, and

that no presumption arises, certainly not without proof, that at the time of the docketing of such judgment against an individual partner, *or afterward*, there was a residuum or ratable share in such individual partner to be bound by the judgment against him, so as to affect or qualify the title obtained by means of the partnership judgment, or to subject such title to contribution under the statute upon which this action is brought in the interest of a creditor of the individual partner.

In the present case the plaintiff has precluded himself from the ability to show whether Russell Martin had any real equitable interest in lot 18, block 85, at the time the Upham judgment, under which he claims, was docketed, or ever afterward, because he has not made Stanley Martin, the other partner, a defendant, and he is a necessary party to take a partnership account for the purposes of showing the facts in question. Barb. on Parties, 354, 356, 461, 462, 523.

The defendant Wagener, in one defense of her answer, sets up a claim in that respect, that Russell Martin was indebted to his partner at the time of the recovery of the Upham judgment, and at the time of the recovery of the Lawrence judgment, to such an amount of the partnership accounts that he had no interest left in the land in question; that Stanley Martin is living, and ought to be made a party so that an account might be taken, and she prays that he may be made a party for that purpose. The plaintiff has not brought him into the suit, and no partnership account can be had, if such account would be admissible had he been a party. The plaintiff puts his case on the facts, claimed by him, that his judgment is the oldest lien, and that at law Russell Martin, the judgment creditor, is a tenant in common of the land. If it be conceded that Russell Martin holds the legal title as such tenant in common, all the authorities agree that he holds such title as trustee for the partnership, and that for all partnership purposes land so held stands upon the same footing, and is treated as personal property. Story on Part., §§ 92, 93; *Van Brunt* v. *Applegate*, 44 N. Y. 544; *Colland* v. *Read*, 24 id. 505; *Smith* v. *Johnson*, 2 Edw. Ch. 28; *Delmonico* v. *Gallamue*, 2 Sandf. Ch. 366; 3 Kent, 27. In *Wilson* v. *Robinson*, 21 N. Y. 592, the learned judge who delivered the opinion of the whole court said: "It will be conceded that the creditors of the firm are legally and equitably first entitled to the partnership effects. Such creditors have a claim upon the joint

effects prior to every other person, which the court will enforce and protect alike against the individual partners and their creditors. Indeed, the partnership property must be exhausted in satisfying partnership demands before resort can be had to individual property of the members of the firm."

The *bona fide* purchaser, without notice or information equivalent to notice of the equity, who purchases real estate standing in the name of a partner on a new consideration, paid for the same, would get a good title. The plaintiff does not and never can occupy that favorable position. Should he sell Russell Martin's interest in lot 18, under the judgment to which he is subrogated, he must take as purchaser with notice of every claim which the firm creditors may assert, for he knows the land to be partnership property. His title would be deemed to accrue at the date of his purchase with such notice. *Sillman* v. *Schurck*, 29 N. Y. 613; S. C., 33 Barb. 20; *Ransom* v. *Vandeacator*, 41 id. 307, 316, 317; *Jackson* v. *Post*, 15 Wend. 588. *In the Matter of Smith*, 16 Johns. 106, the court say: "Where an execution is issued for the separate debts of one partner, it has been the constant practice to take the share which such partner has in the partnership property, but it has been settled, at least since the case of *Fox* v. *Hanburg*, Cowp. 445, that the sheriff can sell only the actual interest which such partner has in the partnership property after the accounts are settled or subject to the partnership debts.

In *Crane* v. *French*, 1 Wend. 311, an execution was issued upon a judgment valid as against one only of two partners, and was levied upon partnership property; afterward another execution issued upon a junior judgment for a partnership debt against both partners and was levied on the same property, which was sold by the sheriff; and the court held that the second execution had the preference and overrode the first levy.

The actual levy of an execution creates as valid a legal lien as the docket of a judgment. In *Dunham* v. *Murdock*, 2 Wend. 553, the plaintiff recovered judgment against Higby, Dewey & Goulding, and issued his execution, by virtue of which the sheriff levied on property belonging to Goulding and one Smith to a sufficient amount to satisfy the execution. Afterward, another execution came to the hands of the sheriff against Goulding and Smith, by virtue of which the sheriff levied on the same goods and sold them. The sheriff refused to levy the money directed to be raised on the

first execution and return it *nulla bona*, for which the plaintiff sued him for a false return. The court held that Goulding's interest, which was subject to or sold on the first execution, "was merely the surplus after liquidating the partnership debts. But before any sale was had on plaintiff's execution another execution came against this property, which was liable in the first instance to the partnership debts. On this execution the whole partnership property levied on was sold. There remained nothing, therefore, in the sheriff's bailiwick from which he could make the plaintiff's money. * * * All the plaintiff could ask would be to have the interest of Goulding first sold under his execution. Had he done so the purchaser would have purchased nothing but a right to the surplus. * * * But the second execution coming the sheriff must have sold the same property on that execution, and, having exhausted the whole of it, the first purchaser would have had nothing from his purchase except, perhaps, a suit in chancery. The plaintiff's situation would have been no better than it is now. We think the course pursued by the sheriff the proper one. First, to sell the property for the satisfaction of the debt which is entitled to preference, and if any part had remained, then he should have sold Goulding's interest therein, but as the whole was exhausted he was justified in making the return which he did." COWEN, J., in *Phillips* v. *Cook*, 24 Wend. 400, says: "This is on the obvious ground that the plaintiff has lost nothing but that of which a court of chancery would have deprived him, and the sheriff ought not to be held accountable for doing what the court of law sees that a court of equity would have compelled him to do."

In *Welch* v. *Adams*, 3 Denio, 128, JEWETT, J., says: "When the goods are sold by the sheriff the purchaser becomes a tenant in common with the other partners. He is entitled, not to the goods of the partnership, but to the interest in the goods of the partner against whom the execution was, incumbered with the joint debts of the partnership, and subject to account for the full value in favor of partners or through them to creditors."

In *Hare* v. *Wallace*, Am. Lead. Cas. in Equity, 206, treating of real estate belonging to a partnership, it is said that such real estate from the moment of its acquisition becomes subject to the equities of the partners, as such, and of those claiming under them as creditors and purchasers. Hence a judgment against one of the members of a firm will be postponed to a subsequent mortgage by the partnership

(*Lancaster Bank* v. *Wiley*, 1 Harris, 544); while a similar preference will be given to an execution issued for a demand against the firm over a prior writ for the separate debt of a partner. *Jarvis* v. *Brooks*, 7 Fost. 37; *Peck* v. *Fisher*, 7 Cush. 386; *Rice* v. *Barnard*, 20 Vt. 479.

Again (see page 242), that the safer ground in which to put the case of *The Lancaster Bank* v. *Wiley*, *supra*, seems to be that an execution for a liability of the firm is equally entitled to priority over an antecedent lien for a separate debt of one of the partners, whether real or personal property is in question. The same doctrine is re-affirmed in volume 2, page 337, that a levy for a debt due by the partnership relates back to the equity of the partners, and thus obtains a priority over anterior executions for the separate debts of the partners.

At page 337 it is said: "But the American cases generally cut the knot as too tedious to unloose, and postpone the separate creditors to the joint whenever executions issued by both come in conflict, without other proof of the insolvency of the firm, or that there will be no surplus left for the separate creditor on a settlement of the partnership accounts, than the existence of the executions themselves; which may, perhaps, be regarded as *prima facie* evidence of the inadequacy of the partnership assets to satisfy the demands against them — and (see id. 340) when, however, levies made under writs issued for the individual debts of each partner are followed by an execution for a joint debt, before the goods have been sold and while they are still in the hands of the sheriff, the latter will have the superiority belonging to the equity of the firm, which entitles each partner to require that the partnership assets shall be applied to the payment of the demands against the partnership, without regard to the state of the accounts between himself and his copartners. Hence, under these circumstances, a sale under the separate writs will confer no title as against a purchaser under the joint execution. And if a sale take place, by agreement, under all the writs simultaneously, the whole of the proceeds will be primarily applicable to the execution issued for the debt of the firm." See, also, same point, 1 Am. Lead. Cas. 472, 479 (4th ed., Phil. 1857).

I have come to the conclusion that the title acquired by the defendant Wagener, originating in a partnership debt, is free and clear of the lien of the Upham judgment which the plaintiff would enforce against it, and is not liable in the hands of this defendant

to be sold or to be made to contribute for the plaintiff's benefit, and this, on the assumption which has been so far conceded that the title of that part of lot 18 conveyed by Russell Martin to himself and Stanley Martin, by the deed of 1859, was vested at law in each named grantee as a tenant in common. If by that conveyance the whole title was vested in Stanley Martin, then the Upham judgment never was a lien on any part of the lot so conveyed. In the disposition made of the plaintiff's claim, as above stated, it is held to be wholly immaterial which of the partners held the mere legal title, as the whole equitable title (the real ownership) was in the firm collectively.

But if the question was material here, I should incline to the opinion that Russell Martin's deed vested the entire legal title in Stanley Martin, for the reason that Russell Martin, though competent to grant, was not capable of taking by grant from himself, and that as he granted, as party of the first part, the whole estate, the grantee capable of taking took the whole estate at law.

According to the *Touchstone*, " to the making of every good deed it is requisite (*inter alia*) that there be a person able to contract and to be contracted with (54); that the person making it be able to give, grant, make or do the thing contained in it; that the person to whom it is made be capable of the thing to be given, granted, made or done thereby; for if it be made by or to any such persons as are disabled, as infants, aliens, women, covert person attainted of treason or felony, idiots and such like, will be void *in all or part* (55); and if divers join in a deed, and some are able to make such a deed and some are not, this shall be said to be his deed alone that is able, as if divers join in the grant of a thing by deed, and one alone hath all the estate and the rest have nothing in the thing granted, it shall be said to be his grant alone that hath the estate; and so *e converso*. If a deed be made to one that is incapable and to others that are capable, and in this case it shall inure only to those that are capable, a deed that is intended and made to one purpose may inure to another; for if it will not take effect that way it is intended it may take effect another way (82). If a grant be made to the wife or child of I. S. when there is none such, it is void. If a grant be to I. S. and to his first-born son, or to I. S. and her that shall be his wife, and he hath at the time of the grant neither wife nor son, in these cases the grant is void as to the wife and son, and I. S. shall

have all by the grant (235). If there be two grantees and one of them doth take by the deed, it is sufficient (237)."

It is a conceded fact in the case that Russell Martin is wholly insolvent, and the plaintiff's counsel, in one of his points, insists that the firm is also insolvent. If I have read the authorities aright, the latter circumstance does not make any difference in the result. I do not perceive that the former action, in which the equities as to this lot 18 were not involved, mentioned in the answer of the defendant Wagener, affects the plaintiff's claim in the present suit.

As the plaintiff's claim must be dismissed, and his action fails, there does not appear to be any foundation upon which the case stands authorizing the court, upon the present pleadings, to enter into any inquiry as to the rights and equities of the defendants, as between themselves. *Wright* v. *Delafield*, 25 N. Y. 266; *Stevens* v. *Hall*, 2 Robert, 676.

Both the defendants Coleman and Brewer claim, under a judgment against Russell Martin alone, for his individual debts subsequent in time to the plaintiff's (Upham) judgment, and neither of them has any equity equal to that of the defendant Wagener under the latter judgment for the partnership indebtedness.

The complaint is dismissed with costs to be paid to the defendant Wagener; as between the plaintiff and the other defendants no costs are allowed.

*Judgment affirmed, with costs.*