(69 App. Div. 237.)

### In re JONES' ESTATE.

(Supreme Court, Appellate Division, First Department. February 14, 1902.)

1. TRANSFER TAXES—JOINT-STOCK ASSOCIATIONS—STOCK—VALUE OF REALTY—
RIGHT TO ESTIMATE.
    The value of the real estate of a joint-stock association formed by private agreement between individuals under Laws 1854, c. 245, conferring upon such associations certain powers, but expressly declaring that they shall not possess the rights of corporations, and Laws 1867, c. 289, authorizing them to hold real estate in the name of their president, should not be taken into consideration in appraising the value of shares in such associations held by a decedent for the purpose of levying the transfer tax required by Laws 1891, c. 215, exempting interest in land from taxation; for the title to such real estate does not vest in the association, but in the individual members as tenants in common.
2. SAME—JOINT-STOCK ASSOCIATIONS—APPRAISAL OF GOOD WILL.
    Under the transfer tax law (Laws 1891, c. 215), subjecting "all property" which shall pass by will or the intestate laws to a tax, the good will of a newspaper owned by a joint-stock association is property, and must be considered in appraising the value of stock in the association.
    O'Brien, J., dissenting.

Appeal from surrogate's court, New York county.

Proceedings in the matter of the appraisal of property of George Jones, deceased, under the transfer tax law. From an order of the surrogate court confirming the report of the appraiser, the executors. of and beneficiaries under the will appeal. Modified.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, and INGRAHAM, JJ.

G. B. Townsend, for appellant.
Edmund F. Harding, for respondent.

INGRAHAM, J. The decedent, a resident of this state, died on the 12th day of August, 1891, leaving a last will and testament, which was duly admitted to probate. Upon an application to appraise the estate subject to the transfer tax, the appraiser included as a part of the testator's property subject to the tax the interest of the testator in a joint-stock association known as the New York Times Association; the testator being the owner of $46/100$ of such association. The appraiser fixed the value of the interest of the estate in the personal property of the Times Association at $15,640; in the New York Times Building, a building in the city of New York owned by the Times Association, at $575,000; in the good will of the newspaper, less the existing debts of the association, at $184,000. The executor of the estate on this appeal objects to including the interest in the real estate and the good will of the

newspaper, and insists that the transfer tax is not chargeable upon the testator's interest in the real estate of the New York Times, and in the good will of the business carried on by the New York Times.

It appears that this association was formed in the year 1872 by a written agreement, which was introduced in evidence before the appraiser. By that instrument seven persons, parties thereto, organized a joint-stock association for the purpose of continuing the publication of a certain newspaper in the city of New York, called "The New York Times." These parties were declared to be the sole proprietors of the same. The business of the association, and the custody and control of its property and affairs, were to be vested in not less than two or more than five directors. One of their number was to be the editor of the newspaper, and the directors were to receive and disburse all moneys incident to the business. Three directors of the association were appointed by the instrument, and the officers thereof were to be a president, secretary, and treasurer. It was also provided that the title to all real estate owned by the association, or to which it might thereinafter become entitled, should be taken in the name of the president of the association, to be held by him for the use of the association, subject to the control and disposition of the directors as expressed by resolution entered on the minutes. This joint-stock association continued under this agreement to publish the New York Times. At the death of the testator the Times Building stood in the name of Henry A. Morgan, as president of the Times Association. It was stipulated that the Times Building at the time of the testator's death was worth $1,200,000.

The question presented is whether the interest of the decedent in this real estate was real or personal property at the time of his death. When this joint-stock association was formed, the acts in force regulating such associations were chapter 245 of the Laws of 1854, and chapter 289 of the Laws of 1867. By the act of 1854 it was provided that it should be lawful for such an association to provide by its articles of association that the death of any stockholder, or the assignment of his stock, should not work a dissolution of the association; that the association might by the articles of association provide that the shareholders may devolve upon three or more of the partners the management of the business; and that the act should not be construed to give to such association any rights and privileges as corporations. By the act of 1867 it was provided that it should be lawful for any joint-stock company or association to purchase, hold, and convey real estate for certain specified purposes, and that all conveyances should be made to the president of such joint-stock company or association as such president, and who and his successors, from time to time, might sell, assign, and convey the same free from any claim thereon against any of the shareholders, or any person claiming under them or any or either of them. It would seem that there was nothing in either of these acts which in any way changed the relation of one member of the joint-stock association to his associates or to the

property of the association. He was still a partner, and ultimately liable for the partnership indebtedness, entitled to require the application of the partnership property to the payment of its debts, and upon its dissolution the division of the remaining property among his associates. The interest of each associate in the property of the association was not different from that of a partner in the copartnership property. In the case of a joint-stock association as well as in a partnership, the beneficial interest in the property vests in the partners as joint tenants, and in both cases is subject to the right of creditors to have it applied to the payment of the debts of the association or copartnership, and the balance upon dissolution distributed among the associates or copartners. The interest of the associates in the association or partner in the copartnership property is not a mere right of action to have the property sold and the proceeds distributed, but the title to all the property vests in the associates or partners as joint tenants.

The act of 1867 provides:

"All conveyances of such real estate shall be made to the president of such joint stock company or association, as such president, and who, and his successors from time to time, may sell, assign and convey the same free from any claim thereon against any of the shareholders, or any person claiming under them, or any or either of them."

The object of this statute was to prevent judgments against a member of a joint-stock association from being a lien upon the property held by the president for the benefit of the association. There is nothing in the act which changes the character of the interest of a member in the property itself which is held by the association for the benefit of its members. The legal title is vested in the president of the association, and that title is free from a claim against one of the shareholders, but subject to the right of creditors of the association to have the property sold, and the proceeds applied to the payment of their debts. The beneficial interest in the property owned by the president, under this provision of the statute, vests in the associates, as real property, the same as an interest in real estate acquired by one member of a copartnership out of the copartnership funds for the benefit of the copartnership is an interest in the real property belonging to each member of the copartnership. The claim of the controller rests upon the statement that the statute taxed, not the property of the association, but the value of the 46 shares of the association held by the deceased. The 46 shares held by the decedent was not in itself property, but represented the ownership of $46/100$ interest of the joint property held for the benefit of the association, and that $46/100$ interest of the property of the association was what passed upon the testator's death, and was taxable under the statute. To speak of the shares of such an association as property, as one would speak of the shares of a corporation as property, entirely eliminates the distinction between a joint-stock company and a corporation. A corporation is an artificial person created by law, in whom the title of the property vests; and the owner of stock in a corporation has no title to the corporation property, the title vesting in the artificial person created by law, known as the

"corporation." When we speak of a joint-stock company or co-partnership, however, there is no such artificial person created, in whom the title to the property can vest; and that is well illustrated in the case of People v. Coleman,—the opinion at special term being reported in 24 N. Y. St. Rep. 970, 5 N. Y. Supp. 394; by the general term in 37 N. Y. St. Rep. 120, 13 N. Y. Supp. 833; and by the court of appeals in 133 N. Y. 279, 31 N. E. 96, 16 L. R. A. 183. It was said in the court of appeals by Judge Finch that:·

"We may thus see upon what the legislative intent to preserve them as separate and distinct is founded, and what distinguishing characteristics remain. The formation of the one involves the merging and destruction of the common-law liability of the members for the debts, and requires the substitution of a new or retention of the old liability by an affirmative enactment which avoids the inherent effect of the corporate creation. In the other the common law remains unchanged and unimpaired, and needing no statutory intervention to preserve or restore it. The debt of the corporation is its debt, and not that of its members. The debt of the joint-stock company is the debt of the associates, however enforced. The creation of the corporation merges and drowns the liability of its corporators. The creation of the stock company leaves unharmed and unchanged the liability of the associates. The one derives its existence from the contract of individuals; the other, from the sovereignty of the state."

And we may add to this distinction thus emphasized by Judge Finch that in one case the title to the property of the corporation, both real and personal, vests in the corporation, while in the other case the legal or beneficial title to the property vests in the associates. In the case of real estate purchased by the president under the permission contained in the act of 1867, the legal title would vest in the president of the association for the beneficial use of the associates, while in the case of a corporation such title to real property, acquired by third parties or its officers for the beneficial use of the corporation, is vested in the corporation itself. If we assimilate the beneficial interest of a member of a joint-stock association in real property held by its president to the interest in real property of a copartnership held by one partner, it would seem to follow that the interest of such an associate was real property, and would go to his heir at law, and not to his next of kin. Such is now, I think, the settled law of this state.

In Smith v. Jackson, 2 Edw. Ch. 28, the vice chancellor, after examining the authorities, says:

"I see no difficulty in the rule which they so clearly indicate, of considering the legal estate in freehold property, purchased by partners for the purposes of their trade or by way of commercial speculation, as real estate passing by devise or descent in the ordinary course. At the same time, the equitable interest in such property, arising from an express agreement or the clear and manifest intention of the parties, is to be deemed part of the partnership stock, subject to the partnership debts, and liable to be applied accordingly."

In Buchan v. Sumner, 2 Barb. Ch. 167, 47 Am. Dec. 305, the chancellor confirms this view, and says:

"Thus at the common law, if land was purchased with copartnership funds for partnership purposes, and was conveyed to all the partners generally, in fee, it would at law create a joint tenancy, so that neither could convey any more than his share of the land during the lives of his copart-

ners. And upon the death of either of the partners without having severed the joint tenancy by a conveyance, the legal title to the whole of the land would survive to the other copartners. But under the statutes of this state relative to joint tenancies the several copartners to whom such a conveyance was made would become tenants in common of the legal title. And upon the death of either the undivided portion of the legal title thus vested in the deceased partner would descend to his heirs at law, without reference to the equitable rights of the several copartners in the land as a part of the property of the firm. * * * And for this purpose the holders of the legal title are considered in equity as the mere trustees of those who are beneficially interested in the fund, not only during the existence of the copartnership, but also upon the dissolution thereof by the death of some of the copartners or otherwise."

Attention is then called to the conflict of opinion in England as to whether the real estate of a copartnership upon the death of one of the copartners, and after the debts have been paid and the equities adjusted between the several members of the firm, belongs, in equity, to the executor or administrator of the decedent, as a part of his personal property, or whether the beneficial interest, as well as the legal title, in the decedent's share in such real estate, descends to the heirs at law. The court states the American rule, as follows:

"First, that such real estate, is, in equity, chargeable with the debts of the copartnership, and with any balance which may be due from one copartner to another upon the winding up of the affairs of the firm; secondly, that, as between the personal representatives and the heirs at law of a deceased partner, his share of the surplus of the real estate of the copartnership, which remains after paying the debts of the copartnership, and adjusting all the equitable claims of the different members of the firm as between themselves, is considered and treated as real estate."

And the court in conclusion says:

"Although a court of equity considers and treats real property as a part of the stock of a firm, it leaves the legal title undisturbed, except so far as is necessary to protect the equitable rights of the several members of the firm therein."

I do not find that this rule has ever been questioned, but it has been referred to again and again with approval. Thus in the case of Fairchild v. Fairchild, 64 N. Y. 478, it is said:

"In this country, real estate belonging to a partnership, for the purpose of paying the debts and adjusting the equities between the members of the firm, is treated as personal property; and what remains is considered and treated as real estate, which would go to the heirs of the parties according to their interests. This opinion was reached by the chancellor in an elaborate opinion in Buchan v. Sumner, 2 Barb. 200, 47 Am. Dec. 305, reviewing all the American authorities, and was approved and adopted by this court in Collumb v. Read, 24 N. Y. 505. * * * But the American rule, that the remainder descends to the heir, does not affect the character of the property as partnership effects, except that the incidents and qualities of real estate are revived. It is divided as so much money capital would be, but it resumes its original qualities."

The beneficial interest of the decedent in the real estate of this joint association thus being real estate, and as such, in the absence of any testamentary disposition thereof, passing to his heir at law, and not to his next of kin, it seems that the transfer of such interest in this real estate was not taxable. By section 1 of the transfer tax law (chapter 215 of the Laws of 1891), in force at the time

of the death of testator, it is provided that, if such beneficial interest is in land in this state, such interest shall be exempt from taxation. It would seem, therefore, that the interest in this real estate was not subject to taxation, and that the learned surrogate was in error in confirming the report of the appraiser, in including the beneficial interest in this real estate that passed under the will of the testator as a transfer subject to taxation.

We agree, however, with the surrogate, that the value of the good will of this association in the Times newspaper was property which passed under the will of the testator, and was taxable. The association, as before stated, was organized to conduct and publish a newspaper called "The New York Times." That paper had been established for many years in New York and had become a valuable property. It belonged to the associates. It went to make up the property of the joint-stock association, and was transferable as such, and the evidence is that at the time of the death of the testator it was valued at $900,000. It was capable of being transferred by will or assignment, and had in fact all the attributes of property yielding a large revenue and worth a large sum of money; and that the personal representative of a person owning this species of property at his death would be chargeable with the testator's interest therein is quite evident. It passed by will to those to whom it was specifically bequeathed, and it realized for them a large sum of money, and it was clearly a transfer of property, within the provisions of the transfer tax act. Section 1 of chapter 215 of the Laws of 1891, in force at the time of the testator's death, provides:

"After the passage of this act all property which shall pass by will or the intestate laws of this state * *' * shall be and is subject to a tax at the rate hereinafter specified." * * *

And we think that this property, which included the interest of the testator in the Times newspaper, excluding the real estate, was properly taxed.

As these are the only questions presented on this appeal, it follows that the order of the surrogate should be modified by deducting therefrom the interest of the testator in the real estate, and the proceedings remitted to the surrogate to enter a decree in conformity with the views herein expressed, without costs to either party on this appeal.

VAN BRUNT, P. J., and HATCH, J., concur.

O'BRIEN, J. (dissenting). The New York Times Association issued 100 shares, of $1,000 each, of which the decedent owned 46; and this proceeding was for the purpose of determining the value of such shares for the purpose of taxation under the act in relation to the taxable transfers of property. The question presented is whether in appraising the shares the appraiser erred in taking into consideration the value of real estate of the association. It may be conceded that real property owned by the decedent, and devised in a direct line, would not be taxable; but it does not follow that, in determining for the purpose of taxation the value

of shares in a joint-stock association, some regard should not be had of the value of realty which unquestionably plays a part in making up the share value. Where shares are to be appraised, which, like those in this case of the New York Times Association, are inactive, infrequently sold, and never come into the open market, an appraiser, having no reported sales to guide him, is not guilty of pursuing a wrong method, when, in order to find the market value of such shares owned by the decedent, he inquires into the value of the property which represents the shares. It requires no argument to demonstrate that, the greater the quantity and the greater the value of the real estate held by the association, the more valuable would be the shares. It is not a taxing of real estate to consider it in reaching a conclusion as to what is the value of the shares. Such real estate is not the property of the shareholders, but belonged to the association. What the decedent owned, therefore, was not real property, but 46 shares in the joint-stock association, which, in turn, owned the property. Regard being had to the close analogy between shares in a joint-stock association and the stock of a corporation, I can think of no good reason why the shares of the former should not be taxable precisely as the stock of any corporation is taxable,—that is, as personalty,—whether the value thereof depends in whole or in part upon realty or not. As correctly urged by the respondent, the particular inquiry here is not as to the nature of the association, but as to the nature of its shares of stock. The realty in this instance was held exactly as a corporation holds its realty. The title was in the president, who could convey it free from the claims of shareholders; and there is no more reason for holding that the real property belonged directly to the shareholders, than in saying that stockholders in every corporation own the real estate of such corporation. The interest and the ownership which the shareholders of this association had was in the shares, which carried the right of a proportional participation in the profits or assets, whenever distributed, either in the form of dividends or at the final winding up. The shares were transferable by indorsement, and, upon the death of a member, went to his legal representatives, and not to his heirs. Thus they had all the attributes of shares of corporate stock; the principal, if not the only, difference between them and ordinary shares of corporate stock being that in certain events the holders might jointly and severally be liable for the debts of the association. As stated, however, in 17 Am. & Eng. Enc. Law (2d Ed.) p. 637, "Individual liability of the shareholders for the corporate debts is no longer incompatible with the corporate idea." But it is unnecessary to pursue the subject of the close similitude of a joint-stock association and a corporation, which is clearly set forth in People v. Wemple, 117 N. Y. 136, 22 N. E. 1046, 6 L. R. A. 303, or to determine in what respect the former approaches to a partnership. What we are here concerned with is whether an error was committed in the method followed by the appraiser in fixing the taxable value of the shares of the association. It was his duty to ascertain such value in the best and most practical way, and, in the

absence of any reported sales which would fix the value, there was nothing wrong in the method which he adopted, of inquiring into the different items that went to make up the value of the shares. In this connection, in taking into consideration the value of the real estate, I do not think he committed error. The shares were to be regarded as personal property representing an interest which the shareholders had in the association, and the fact that some of the property of the association consisted of realty in no way made the tax imposed one upon realty. Under the circumstances, the extent and value of the real estate were properly to be considered by the appraiser; there being accessible no other means more satisfactory for determining the value of the shares.

For these reasons, I dissent from the conclusion reached by the majority of the court.